WILLIAM A. RAWSON, plaintiff in error vs. JOHN S. McJUN-
KINS, defendant in error.

[1.] A judgment in the hands of the assignee, is subject to all the defences to which, it was subject in the hands of the plaintiff.

[2.] New trial moved for on the ground that the verdict was decidedly against the evidence—refused.

In Equity, from Webster county. Tried before Judge KIDDOO, at September Term, 1850.

This was a bill filed by John S. McJunkins against William A. Rawson, assignee, to enjoin proceedings on a *fi. fa.*, and for relief.

The bill alleges, that on the 25th December, 1851, one Abram Prim, borrowed of Sterling Evans due $1,71200, and gave his promissory note, with plaintiff as his surety, due twelve months after date; that plaintiff was in no way interested in the consideration thereof. That at the April Term, 1852, suit was instituted upon said note, and at October Term, thereafter, judgment went against said Prim and plaintiff; but that plaintiff, not having appeared and made any special defence, and having signed said note without designated himself as surety, judgment went against both as principals, and execution issued accordingly. That various pay-

ments were made on said *fi. fa.* by Prim. On 26th April 1853, Evans transferred the *fi. fa.* to Edward E. Rawson, who on the 23d May, 1853, transferred the same to William A. Rawson, the defendant. That just before the *fi. fa.* was transferred to defendant, Ed. E. Rawson agreed with Prim, in consideration of one hundred dollars, to give him indulgence on the same, till the next February, and that this was done without the knowledge or consent of complainant.

That at the time this indulgence was agreed to be given, Prim was solvent, and able to pay off said *fi. fa.*, but since that time he has removed from the State and carried off all his property. He moved off in 1853.

The bill further states, that after the making of said contract, Prim offered to pay off the balance due on said *fi. fa.*, if the defendant would give credit thereon for the one hundred dollars, paid as aforesaid for indulgence, which, defendant refused to do. That defendant has had the property of complainant levied on under said *fi. fa.*, and the same is advertised to be sold by the Sheriff.

The answer of defendant states, that he has no knowledge of the application to Evans to borrow money or of the consideration of the note, signed by Prim and complainant, and upon which said *fi. fa.* is founded. Knows nothing of Prim's solvency at the time judgment was obtained, but he certainly was in embarrassed circumstances. Admits that the note was signed, and judgment obtained, and execution issued as stated in complainant's bill. Admits the transfer of said *fi. fa.* as stated, but has no knowledge of any contract between Prim and Ed. E. Rawson, as to giving indulgence on said *fi. fa.*; denies that Prim ever offered to pay off the same; admits that the execution has been levied as stated.

The case was submitted upon the bill and answer, the evidence and charge of the Court, and the jury found for the plaintiff, and decreed a perpetual injunction of the *fi. fa.*, as to him.

The defendant moved for a new trial, upon the following grounds:

1st. Because the Court erred in charging the jury, that if McJunkins was security on the original note, then if the defendant gave indulgence to him, for a consideration, without McJunkins' consent, he was released from further liability, although defendant purchased the *fi. fa.* without notice that plaintiff was security. That if plaintiff was only security on the note, it was not necessary that defendant should have had notice of that fact, as he traded for the debt after it was due.

2d. Because the verdict was decidedly against the weight of evidence.

3d. Because the verdict is contrary to law and evidence.

The Court refused to grant a new trial, and defendant excepted.

E. H. BEALL ; and SCARBOROUGH, for plaintiff in error.

B. S. WORRILL ; and McCAY & HAWKINS, *contra.*

*By the Court.*—BENNING J. delivering the opinion.

Were any of the grounds of the motion for a new trial good?

[1.] The first ground was the charge of the Court. That charge we think, was right. The assignee of a judgment, holds it subject to all the defences to which, the plaintiff in it, held it subject. Such is the plain import of the statute. *Pr. Dig.*, 465. And so, it has been held by this Court, *Colquitt vs. Bonner,* 2 *Kelly,* 155.

The second ground was, that the verdict was, " decidedly against the weight of evidence."

A great question in the case was, whether the sum borrowed, $1,600, was borrowed by Prim and McJunkins jointly—Prim receiving of it, $1,200, and McJunkins $400 ; or

whether, the sum was borrowed by Prim separately—he receiving of it, the whole $1,600, and afterwards, himself lending $400, to McJunkins. It seems clear, that McJunkins obtained $400, of the $1,600, one way, or, the other.

One of these two ways then being the way in which he obtained the $400; the question is whether a verdict involving the assumption—that the last was the way, was "decidedly against the weight of the evidence."

This question depends mainly, upon the import of the testimony of Prim, and that of his son. Prim, the father, was examined by interrogatories twice. On his first examination, what he stated, was this. "We signed the note jointly, but I received all the money, and applied it to my own use, the understanding between McJunkins and myself, was, that he was to be responsible for me to Evans, for the payment of said debt." A verdict assuming that the last way was the one, would not be against this statement of Prim's, but would be supported by the statement.

But what Prim, on his second examination, said, was this. "That he and complainant did borrow money of Sterling Evans." "Complainant got four hundred dollars. Complainant has paid his share of the debt. The understanding was, at the time the money was borrowed, that complainant was to get four hundred dollars, and witness twelve hundred dollars. He does not now owe any part of the money still due on the fi. fa. obtained by said Evans, on said debt. According to his understanding complainant did owe four hundred dollars, and that he paid it."

What Prim, the father, thus states, Prim, the son, to some extent, corroborates. I> says, in substance, that he heard his father and McJunkins agree to borrow the money, and the agreement was this; they were to borrow the money jointly, and that his father was to have $1,200 of it, and McJunkins $400. This conversation however, took place before the borrowing. This witness also says, that he recollects, that his father, in his first depositions, stated, that "they were

jointly interested." Those depositions contain no such statement of his father. This witness further says, that McJunkins paid the $400 which he got, to Prim.

Now the question is, can this last testimony of the father, and this testimony of the son, be reconciled with the first testimony of the father; or, if they cannot, were the jury bound to accept them, in preference to that?

An agreement between Prim and McJunkins, that the two should on their joint note, borrow $1,600, of which McJunkins should take $400, and Prim $1,200, differs so little, in aspect and practical effect, from an agreement between the two, that one of them, Prim, should on their joint note borrow the $1,600, and out of it, himself let McJunkins have $400—that an ordinary person would run some risk of confounding the one with the other, and, therefore, of stating the one, when he means the other. That the witnesses meant to state the same thing, all the time, and, that that thing was, that Prim got the $1,600 from the lender, and McJunkins got the $400 from Prim, is pretty strongly to be inferred, from this, that McJunkins paid the $400, not to Evans, but to Prim. Why should McJunkins pay the $400, to Prim, unless he owed it to Prim, and how could he have owed it to Prim, unless he had borrowed it from Prim, and not from Evans.

We, then, are not prepared to say, that it was impossible for the jury to reconcile this evidence.

But even if we were, we are not prepared to say, that the jury were bound to accept the last testimony of the father, and the testimony of the son, in preference to the first testimony of the father.

The first testimony is strongly confirmed by a fact, which seems to be undoubted, the fact to which I have just referred, that McJunkins paid the $400 to *Prim*, not to Evans.

That testimony is also confirmed by the conduct both of Prim and of McJunkins, in respect to the *fi. fa.* Prim was the one, who manifested all the interest in the *fi. fa.* It was

he that paid usury, for indulgence; it was he that wished, and offered, to pay up the whole *fi. fa.* on the terms of a relinquishment of the usury. McJunkins did nothing—said nothing.

Then, Prim, the son, says, that he recollects a statement of importance, as having been made by his father, in his first depositions and those depositions contain no such statement.

We are not satisfied, then, that, it is true, that the verdict was "decidedly against the weight of evidence."

But even if we were, it would not follow, necessarily, that we should be bound, to order a new trial. The new trial Act of 1854, says; that "the Judges of the Superior Courts, may have the power to exercise a sound discretion, in granting new trials, where the verdict may be decidedly and strongly against the weight of evidence;" "and the Supreme Court shall have power to revise and control such discretionary power in the Superior Court." *Acts*, 47.

Thus, it is seen, that granting a new trial, even where such a ground as this, is true beyond question, is but a mere matter of discretion.

And looking at one fact in this case, we hardly think it would have been an abuse of discretion, in the Court below, to have held this ground insufficient, even if the ground were true beyond dispute. That fact is this: Prim offered to pay up Rawson, if he would relinquish the $100 of usury, Prim had paid for receiving indulgence till a certain time. That offer was made when about a third of the time given had run out. Rawson refused the offer. Prim ran away, and Rawson then turned upon McJunkins, who, in every interpretation of the testimony, was, at the time of Rawson's refusal of Prim's offer, bound only on Prim's account. In the face of such a fact as this, Rawson has no right to expect to receive any thing beyond what the law, taken in its utmost strictness, will give him. He may have what is nominated in his bond; no more.

There was some conflict in the testimony, on another point; viz, whether McJunkins consented to the indulgence; but there was as much evidence, perhaps, on the one side of that question. as there was on the other.

As to the third and last ground, it must of course be true, that that is not sufficient, if it be true, that the second is not.

Judgment affirmed.