JAMES N. SCOTT, plaintiff in error, *vs.* JOHN HARKINS AND JOHN H. ARTHUR, defendants in error.

1. At the request of S., a claim against him is bought by H., at a large discount, under an agreement at the time, that if S. will refund to H. the amount paid for the claim, with interest, by the time the same is due, S. shall be released as to the balance. S. failing to make payment according to the contract, H. is proceeding to collect the whole claim: *Held,* That the collection ought not to be enjoined, except upon condition that S. pay to H. the amount paid by him for the claim, with interest thereon, according to the contract.

2. The assignee of a judgment takes it, subject to all the equities between the original parties.

Bill for specific performance, injunction, and relief, in Gordon Superior Court, decided by the Hon. DAWSON A. WALKER, at the October Term, 1860.

James N. Scott exhibited his bill against John Harkins and John H. Arthur, in which the following facts are alleged, to-wit:

In September, 1855, the complainant, James S. Harkins, and John C. Butler, formed a mercantile partnership under the firm name and style of Scott, Harkins & Company, and transacted business in that form, until the 26th of March, 1856, when the partnership was dissolved by mutual consent. Before dissolution, the firm had purchased a stock of groceries, which Butler had taken to the town of Resaca for sale. When the partnership was dissolved it was agreed that the complainant should take the stock of dry goods then on hand at the store in Calhoun, and pay off all the outstanding debts against the firm for dry goods, and that Butler should take the stock of groceries on hand, at Resaca, and pay off all the liabilities of the firm for groceries. The complainant proceeded, in good faith, to a full compliance with the agreement on his part. The firm owed Baker, Wright & Co., of Augusta, a debt of $502 00, by open account, for groceries. Baker, of said firm of Baker, Wright & Co. came up to Calhoun to close up said account, and being fully informed of the agreement and terms upon which the firm of Scott,

Harkins & Co. was dissolved, took Butler's individual note for the grocery bill, receipted the account, and went away. Some time thereafter Butler's note was sent back to him by mail, with directions to substitute the note of Scott, Harkins & Co. therefor, which Butler did, in violation of his agreement at the time the partnership was dissolved. Afterwards Baker, Wright & Co. brought suit on the note, in the Inferior Court of Gordon county, against Scott, Harkins & Co., and complainant filed a plea of the general issue, and intended to set up the defense arising out of the state of facts before detailed. When trial term came, the witness by whom complainant expected to make good his defense, was absent, and his attorney was forced to confess a judgment against the defendants. Complainant entered an appeal to the Superior Court, and pending the appeal, Baker, Wright & Co. proposed to compromise the claim at about fifty cents in the dollar, Butler having in the meantime moved to the State of Arkansas. Complainant being unable, or unwilling, to buy the claim, went to John Harkins, the brother of James S. Harkins, and explained the whole matter to him, and how James S. Harkins and complainant were released from the debt, and that Butler alone was liable therefor, and asked the said John Harkins to buy it. John Harkins replied that if he could get the claim low enough, and on time, he would buy it; that he wanted to build a house, and that by that means he could employ Butler, who was a house carpenter, to do the work. John Harkins, with a full knowledge of all the facts, and with a distinct understanding that neither complainant nor James S. Harkins was liable for the debt, and that he was to look for payment to Butler alone, bought said claim for $200 00, to become due and payable twelve months after its date. The case of Baker, Wright & Co. against Scott, Harkins & Co., on said note, came up for trial, and complainant explained the whole transaction to Col. Michael Francis, the attorney of John Harkins, and told him of Harkins's express agreement to release complainant and James S. Harkins from said debt, and to accept a confession of judgment from Butler alone; to all of which

Francis replied, that he would take a judgment against all the members of the firm of Scott, Harkins & Co., with the distinct understanding that the agreement between complainant and John Harkins should be carried out, and the judgment should be pressed against Butler alone. Under this agreement the judgment was taken against Scott, Harkins & Co., and Harkins, in fulfillment of his contract and promise, executed a release to James S. Harkins, his brother, and sent an exemplification of the judgment to the State of Arkansas for collection out of Butler, who, it was said, was solvent. Afterwards, John Harkins sold and controlled the judgment to John H. Arthur, who knew all the facts hereinbefore stated, and who paid nothing for the claim, but is combining and confederating with John Harkins to injure and defraud complainant. Arthur pointed out the house and lot of complainant, and some other property, to be levied on under the *fi. fa.*, and the property was levied on and advertised for sale.

The prayer of the bill is, that the collection of the *fi. fa.* out of complainant may be enjoined, and for general relief.

On the 25th of August, 1860, the presiding Judge granted a temporary injunction, and passed an order requiring the defendants to show cause, on the second Tuesday in October thereafter, why an injunction should not be granted as prayed for.

At the time designated in the order, the defendants appeared and filed their answers plainly, fully, and distinctly denying all the facts and circumstances on which the equity of the bill was founded, but admitted in their answers, that John Harkins, at the request of complainant, did buy the claim from Baker, Wright & Co., for two hundred dollars, agreeing with complainant at the time, that if he (the complainant) would pay back to Harkins the said sum of two hundred dollars, with interest, by the time the same should become due, he would not look to complainant and James S. Harkins for the balance, but look to Butler alone, for such balance; but that complainant omitted to make said payment.

The answers also admitted that John Harkins informed

Arthur of these facts, when the claim was transferred to him, and that Arthur bought the claim with notice of said agreement, and also of complainant's failure to make the payment.

Upon reading the bill and answers, and hearing argument thereon, His Honor Judge Walker passed an order "that an injunction do issue in accordance with the prayer of the bill as to that part of the judgment and execution over and above the sum paid by the defendant, Arthur, for the same, to-wit: the sum of two hundred and twenty-seven dollars, with interest from the 2d day of August, 1860, and costs, and that defendants be allowed to proceed to collect that part of said judgment, and injunction being refused as to that part of the same."

This decision is complained of as error, before this Court.

MILNER & PARROT, for plaintiff in error.

WILLIAM H. DABNEY, for defendants in error.

*By the Court*—JENKINS, J., delivering the opinion.

This is a case in which both parties are dissatisfied with the ruling of the Court below; the complainant insisting that the Court should have granted a general injunction; and the defendant maintaining that *none* should have been granted. It is apparent that the answers of the defendants deny all the equity asserted in the bill; and had they stopped there, their position before this Court would have been tenable. But the defendant, Harkins, goes further, and acknowledges that, at the time, he, by request of complainant, purchased the claim, he promised that if complainant would pay the sum he (Harkins) was to pay for it, at the time such payment would become due, with interest, he (Harkins) would release complainant as to the balance; but that complainant had failed to comply with this condition, and he, (Harkins,) having, from his own resources, paid the sum at the time contracted, had assigned it to Arthur, the other defendant, communicating to him the above facts, and adding, that the time for compliance with this condition having passed, Arthur took the judgment re-

leased from this conditional agreement or promise. Arthur answers to the same effect, and ignores all the allegations in the bill.

The only ground for an injunction is furnished by this voluntary statement of Harkins. If the pleadings disclose any equity in behalf of complainant, it is to be found in the promise of the defendant, Harkins, making for the complainant a case different from that stated in his own bill. So we think the Court below must have regarded it. It would seem probable that the complainant was induced to confess judgment in part, at least by this, or a like promise, by Harkins. Out of this state of things might arise an equity, but the question would again occur, whether he had not lost that equity by failing to make payment, as he had contracted to do.

Here would arise the question whether or not, in this case, time was of the essence of the contract; and this question has not been discussed before us. We are of opinion that the Judge very properly refused a general injunction. We think, too, that in view of all the circumstances of the case, it was proper to grant an injunction for the excess above the $200 00, and interest actually paid by Harkins, but *only upon terms.* The order of the Court was too liberal to the complainant. Before asking equity he should do equity. The defendant should not be tied up as to a part, and left to take the chances of getting the remainder, and subjected to the law's delays. The order should have been, that upon payment, by complainant to the defendant, Arthur, of the sum paid by Harkins, with interest, injunction issue for the remainder due, until the further order of the Court. As to the relation sustained by Arthur, as assignee of the judgment at law, to the case, we need only say that the settled doctrine of this Court is, that the assignee of a judgment takes it subject to all the equities between the original parties.

Let the judgment be reversed.