McLendon *vs.* Frost & Crenshaw.

JESSE McLENDON, plaintiff in error, *vs.* FROST & CRENSHAW, defendants in error.

1. Where a judgment is entered up in blank as to the amount of costs, and the clerk, on taxing the costs and issuing execution, has failed 'to fill the blank, the court may order the judgment amended by inserting therein the amount of costs for which the *fi. fa.* has issued, if such amount be correct. The making of such amendment is not cause for dismissing a pending levy, unless the execution is proceeding for costs only.

2. Where an execution is outstanding, and a member of a partnership not a party to it, contracts with the defendant that if he will advance a fund sufficient to pay it off, the fund, after being used for a time, shall be applied to its payment, and the stipulated fund is advanced to the partnership accordingly, the partnership cannot apply the same to an account due to it from the defendant, and then purchase the execution, and, as transferee, enforce its collection. Purchase by a partnership under the circumstances, will operate as payment.

Judgments. Costs. Amendment. Levy and sale. Contracts. Execution. Payment. Before Judge BUCHANAN. Troup Superior Court. May Term, 1877.

Reported in the opinion.

BIGHAM & WHITAKER, for plaintiff in error.

SPEER & SPEER, for defendants.

McLendon *vs.* Frost & Crenshaw.

BLECKLEY, Judge.

1. The execution was proceeding for principal and interest, as well as for costs. That the judgment was in blank as to the amount of the costs, would not be ground for illegality, nor for motion to quash the execution. The immemorial practice has been to enter up judgment, leaving a blank to be filled by the clerk with the amount of the costs, it being, by law, his duty to ascertain and tax the same. Not unfrequently, there are fees of witnesses which are proved and returned too late to be made known to counsel within the time limited for signing judgment—four days from the adjournment of the court. A sort of necessity exists, in practice, for leaving the costs blank; and the practice has prevailed for so long a time, that to disturb it without legislation, at this late day, would be to deny to the past that veneration which courts have ever esteemed its due. The uniform course of practice is evidence of the law—10 *Ga.*, 280 ; 12 *Ib.*, 335 ; 15 *Ib.*, 136, 137, 290, 320, 344, 458 ; 20 *Ib.*, 644. On issuing execution, the clerk should always fill the blank left in the judgment; but the omission is a mere clerical neglect, and the court may have the omission supplied by amendment. Where execution has issued for costs, on a judgment in which the amount is blank, the amount specified in the execution, (nothing to the contrary appearing,) will be deemed the amount duly ascertained by taxation, and in amending the judgment that will be the guide. Such amendment should be no cause for dismissing the levy—certainly not, unless the execution is proceeding for costs alone. Amendments duly made relate back, generally, to the time when the original act was done, or instrument created Thus, a judgment cured of its amendable defects, is as if it had been perfect from the beginning. The absolute rule of the statute, that when an execution is amended the levy falls, does not extend to the amendment of judgments. Repairs to the foundation are not attended with the same consequence, as when the superstructure is altered. You may prop the execu-

tion by working on the judgment, though you cannot prop the levy by working on the execution.

2. The only substantial error which we find in the record is in the charge of the court, to the effect that if Frost received cotton from defendant, the proceeds of which he was to use for a certain time and then pay them to the satisfaction of the execution, and if the contract was made with Frost and solely for himself and not for another, and if he failed and did not pay the money to Thornton, (the original plaintiff in *fi. fa.*) or his attorneys, and if, afterwards, the execution was bought by Frost & Crenshaw in good faith with their money, for themselves, then the issue of payment should be found in favor of the plaintiffs. This charge was not appropriate to the facts in evidence. The execution was in favor of Thornton, and against McLendon. McLendon was indebted to Frost & Crenshaw on account. Frost had some negotiations with McLendon touching certain cotton belonging to the latter, the result of which was, that Frost & Crenshaw (not Frost) got the cotton. They applied it to an account which McLendon owed the partnership. Afterwards, they advanced to Thornton's attorneys the money due on the execution, and took a transfer of the same to themselves. They caused a levy to be made upon McLendon's property, and he raised the issue of payment by affidavit of illegality. According to the evidence, properly understood, the real contest was, whether Frost & Crenshaw got the cotton as payment on their book account, or as a sort of loan to Frost & Crenshaw, (through the contract made with Frost) to be discharged by paying off the execution. Both Frost and Crenshaw were sworn as witnesses, and neither of them pretended that the contract with Frost was made on his own behalf, and not on behalf of the firm; nor did either of them pretend that McLendon let Frost have the cotton. They admitted that he let Frost & Crenshaw have the cotton, and such was the evidence from all sources, including the warehouse receipts. The negotiations were with Frost, but they resulted in a delivery of cotton to the

firm, and the evidence of Frost himself was, that he represented the firm in the transaction, for he says his. contract amounted to a purchase for the firm, or rather to a collection on the account which stood against McLendon on the firm books. It was he, also, that represented the firm in purchasing the execution How it was possible to raise the question, in the way the court's charge suggests, of *bona fides* on the part of the firm, in the purchase, we do not see, as Frost must have known of the first contract when he made the second, he being a direct party to both. If the contract with McLendon was, that the cotton was to be applied to the account, the firm had a right to buy the execution; if, on the contrary, it was, as McLendon contended, that the proceeds were ultimately to be paid to Thornton or his attorneys in satisfaction of the execution, then the firm was charged by contract with the duty of paying off the execution, which duty would be inconsistent with the right to purchase and collect. The question is solely one of contract. What was the true agreement touching the cotton? If McLendon represents it correctly, the execution is paid; if Frost represents it correctly, the execution is unpaid. See *Flournoy vs. Pitman*, this term.

Judgment reversed.