Ritter v. Cost.

No. 9548.

RITTER v. COST.

SUBROGATION.—*Satisfied Mortgage.*—*Purchaser for Value of Judgment.*—*Equal Equities.*—The equity of the purchaser for value of a judgment, which is a lien upon certain real estate, is at least equal to the equitable claim of the owner of such real estate to be subrogated to the rights of the mortgagee in a mortgage thereon, which had been paid off and satisfied, and of which the purchaser of the judgment had no actual knowledge, and where the equities are equal the law must prevail. ELLIOTT, J., dissents, but HOWK and ZOLLARS, JJ., for reasons stated, are of opinion that, upon the facts specially found, no case was made for subrogation in any event.

VENDOR AND VENDEE.—*Real Estate.*—*Judgment Lien.*—*Notice.*—*Value of Improvements.*—The purchaser of real estate is affected with constructive notice of any judgment lien thereon, and if, without actual knowledge of such lien, he buys the real estate and makes valuable improvements thereon, it is his misfortune, and not the fault of the owner of the judgment, and he is not entitled to be repaid the value of such improvements before the lien of such judgment can be enforced.

SAME.—*Execution.*—*Sale in Parcels.*—*Enforcement of Lien Against Parcels.*—*Rule in Equity.*—*Sheriff's Duty.*—Where real estate, which is subject to the lien of a judgment, is sold and conveyed in parcels to different purchasers at different times, and afterwards an execution is sued out for the enforcement of such judgment lien, it is the duty of the proper sheriff, in analogy to the rule in equity in like cases, to offer for sale the several parcels of such real estate, in the inverse order in which the same had been previously sold and conveyed; and where this has been done, and there has been no sale for the want of bidders, and the execution remains unsatisfied, it then becomes the duty of the sheriff to offer and sell, if he can, the parcel of such real estate first sold and conveyed, and the sale thus made by the sheriff is legal and valid.

From the Superior Court of Marion County.

*J. Buchanan, L. Ritter* and *B. W. Ritter*, for appellant.

*H. W. Harrington, A. G. Howe, G. Carter* and *J. N. Binford*, for appellee.

HOWK, J.—The issues joined in this cause were tried by the court, at special term, and at the request of the appellant, the plaintiff below, the court made a special finding of facts and stated its conclusions of law thereon, in substance, as follows:

" On the 6th day of May, 1872, one Solomon P. Stern was the owner in fee simple of the property hereinafter described, he having before that time purchased the same of Julian and Johnson, and executed to them, to secure the purchase-money therefor, certain notes secured by mortgage, upon which there was then due $1,400. On the date last above mentioned said Stern, by warranty deed, sold and conveyed said real estate to one Downey, who, as part of the consideration for the sale to him, agreed to assume and pay, and afterwards did pay, the said notes and mortgage executed by said Stern to said Julian and Johnson; said agreement of assumption was not contained in said deed, but was made verbally. Said Downey afterwards subdivided said real estate into lots, numbered from 1 to 12 inclusive, and sold and conveyed the same, the lot now owned by plaintiff, and described in his complaint, to wit, lot No. 4, being the lot first conveyed, plaintiff becoming the owner of the same through divers mesne conveyances. The plaintiff and those through whom he claims, immediately after the conveyance of said lot 4 by said Downey, went into and have ever since been in possession thereof, and made valuable and lasting improvements thereon, of the value of about $731.

" On April 11th, 1872, one Parker recovered a judgment against said Stern for $162.15, drawing 6 per cent. interest, which became and continued to be a lien upon all of said real estate, so as aforesaid purchased by said Stern of said Julian and Johnson. On October 28th, 1879, the defendant who had, by divers mesne assignments and for a valuable consideration, become the owner of said judgment, caused execution thereon to issue, and the twelve lots hereinbefore mentioned to be levied upon under said execution. Prior to the sale by the sheriff the plaintiff notified the defendant that his lot had been first sold and conveyed by said Downey, and demanded that the other eleven lots be first exhausted; and thereupon the sheriff, by order of defendant, offered each lot and sold said

lot 4 in the order set forth in his return to said execution, in the words and figures following:

" 'I did, on said day, at the door of the court-house of said county, between the hours prescribed by law, at public auction, first expose to sale the rents and profits for a term not exceeding seven years, of said lots Nos. 1, 2, 3, 5, 6, 7, 8, 9, 10, 11 and 12 separately and in the order herein set forth, and received no bid for either of said lots. I then and there offered at public auction, as aforesaid, the rents and profits of all of said lots Nos. 1, 2, 3, 5, 6, 7, 8, 9, 10, 11 and 12 together and as a whole, and received no bid therefor. I then and there offered, at public auction as aforesaid, the rents and profits of lot No. 4, and received no bid therefor. I then and there offered, at public auction as aforesaid, the rents and profits of all of the above described real estate together and as a whole, and received no bid therefor. I then and there offered, at public auction as aforesaid, the fee simple of lots Nos. 1, 2, 3, 5, 6, 7, 8, 9, 10, 11 and 12 separately and in the order above set forth, and received no bid therefor for either of said lots. I then and there offered, at public auction as aforesaid, the fee simple of all of said lots 1, 2, 3, 5, 6, 7, 8, 9, 10, 11 and 12 together and as a whole, and received no bid therefor. I then and there offered, at public auction as aforesaid, the fee simple of said lot No. 4, and George P. Cost did then and there bid the sum of three hundred and thirteen dollars and thirty-four cents, and, no person bidding more, the same was in due form openly struck off to the said George P. Cost, he being the highest and best bidder therefor, and that being the highest and best price bid for the same.'

" The George P. Cost last mentioned is the defendant herein. Said sheriff's sale was duly advertised and regular in all respects. At the time when said Downey bought, and at the time when he paid for said real estate, and at the time when the plaintiff, and those through whom he claims, bought said lot and made said improvements thereon, neither they nor any of them had any actual knowledge of the said judgment against

said Stern; and at the time when defendant, and those through whom he claims, purchased and paid for said judgment, neither they nor any of them had any actual knowledge of said mortgage, executed by said Stern to said Julian and Johnson.

"Upon the foregoing facts, the court finds and states the following *conclusion of law*:

"That the foregoing facts are not sufficient to constitute any cause of action in favor of the plaintiff against the defendant herein."

Over the appellant's exception to such conclusion of law, the court at special term rendered judgment, that he take nothing by his suit, and that appellee recover of him his costs in this action expended. On appeal from this judgment to the court in general term, the only error there assigned by the appellant was, that the court at special term erred in its conclusion of law upon the facts specially found. The judgment at special term was affirmed by the court in general term, and from this judgment of affirmance this appeal is now here prosecuted. By proper assignment the appellant has brought before this court the same error of which he complained in the court below, in general term.

In their argument of this cause, the appellant's counsel have stated the grounds upon which they rely for the reversal of the judgment below, in substance, as follows.

"1st. That the judgment against Stern was only a lien upon such interest as Stern had in the land (before subdivision), and that the lien of Julian and Johnson for the purchase-money of said land (the amount evidenced by the mortgage) was a superior lien to that of the judgment against Stern; that Downey and his grantees, having paid said mortgage without knowledge of said judgment, were entitled to be subrogated to the rights of Julian and Johnson as against the defendant, and to insist that, before defendant could enforce any lien of said judgment against said land, he must first pay the lien for the purchase-money, with interest, or sell subject to that lien.

" 2d. Also, that as the improvements on said lot No. 4 were made by plaintiff and his grantors, in good faith, under color of title and in the belief that they had good title, and without knowledge of the Parker judgment, they were entitled to be repaid said sum so laid out, to wit, $731, before defendant could enforce the lien of his said judgment.

" 3d. That the sale of this lot was invalid, because the other lots sold by Downey *after* his sale of this one, were not first exhausted. It was not sufficient that they were *offered* merely; they must be sold."

Upon the facts specially found by the trial court, we are of the opinion that the appellant is not in a position where he can successfully claim the benefit of the equitable doctrine of subrogation in aid of his cause of action against the appellee. Certainly, the appellant is in no better position than Downey, the original purchaser of the undivided land from Stern. As the remote grantee of Downey, the appellant occupied the precise position of Downey, and none other or better in relation to the purchase-money mortgage. Conceding, therefore, without deciding, that under ordinary circumstances, and in the absence of any intervening rights and equities, the appellant, as the remote grantee of Downey, might have been subrogated to the rights of the mortgage creditors, it is very clear, we think, that under the facts of this case, neither Downey nor the appellant would have been or were entitled to such subrogation as against the appellee. The court found specially that when the appellee, and those through whom he claimed, purchased and paid for the Parker judgment, neither they nor any of them had any actual knowledge of the mortgage executed by Stern to Julian and Johnson; and no facts were found by the court from which it could be inferred that they or any of them had constructive notice even of the existence of such mortgage. Upon these facts, it is apparent that the appellee purchased and paid for the Parker judgment without notice of any kind of the purchase-money mortgage, or of the appellant's claim to be

subrogated thereto. His equity is at least equal to that of the appellant; and the " maxim is, that where there is equal equity, the law must prevail. And this is generally true; for, in such a case, the defendant has an equal claim to the protection of a court of equity for his title, as the plaintiff has to the assistance of the court to assert his title; and then, the court will not interpose on either side; for the rule there is, *'In æquali jure melior est conditio possidentis.'* And the equity is equal between persons, who have been equally innocent and equally diligent." 1 Story Eq., section 64c. This equitable doctrine has been recognized and acted upon by this court in cases somewhat similar to the one at bar, where mortgage creditors have sought to enforce alleged equities against the purchasers for value of existing judgments. *Flanders* v. *O'Brien,* 46 Ind. 284; *Busenbarke* v. *Ramey,* 53 Ind. 499; *Wainwright* v. *Flanders,* 64 Ind. 306; *Tuttle* v. *Churchman,* 74 Ind. 311; *Rooker* v. *Rooker,* 75 Ind. 571.

These cases seem to us to be decisive of the case in hand, upon the question under consideration, adversely to the appellant. They show very clearly that upon the facts found by the court, he can not claim to be subrogated to the purchase-money mortgage, as against the appellee. It follows that the first ground assigned by appellant, for the reversal of the judgment, can not be sustained.

The writer, speaking for himself, and not for the court, is of opinion that, upon the facts found by the court, no case was made for subrogation in any event. The court found that Downey purchased the undivided land, and agreed, as part of the consideration of the sale to him, to assume and pay, and afterwards did pay, the purchase-money notes and mortgage, executed by Stern to Julian and Johnson. Under his agreement of assumption, it would seem to be clear that Downey became and was, in equity, primarily liable for the payment of the notes and mortgage; that, although not a party to either of the instruments in their inception, they became and were, under his contract to assume and pay them,

the equitable evidence of his personal debt; and that, as between himself and the maker of the notes and mortgage, he became and was, in equity, the principal debtor, while Stern was only his surety. This was the doctrine declared in *Josselyn* v. *Edwards*, 57 Ind. 212, and it has been repeatedly recognized, approved and acted upon, and has never been questioned in the later decisions of the court. *Hoffman* v. *Risk*, 58 Ind. 113; *Kester* v. *Hulman*, 65 Ind. 100; *McClure* v. *Andrews*, 68 Ind. 97; *Smith* v. *Ostermeyer*, 68 Ind. 432; *Risk* v. *Hoffman*, 69 Ind. 137; *Gerber* v. *Sharp*, 72 Ind. 553; *Sidener* v. *Pavey*, 77 Ind. 241; *Durham* v. *Craig*, 79 Ind. 117.

In the opinion of the writer, Downey's contract was that he would assume and pay, and he afterwards did pay, the notes and mortgage, executed by Stern to Julian and Johnson. His contract, fairly construed, was to pay off, to satisfy, to extinguish, *not* to keep alive, Stern's notes and mortgage. He paid the notes and mortgage, and, in so doing, he merely paid off his own personal debt, for which under his contract he was primarily liable as the principal debtor. No facts were found by the court from which it can possibly be inferred that, in making such payment, he had any purpose or intention of keeping alive the notes and mortgage. It must be assumed therefore, the writer thinks, that by his payment he intended to and did extinguish both the debt and the security.

From this conclusion, it follows necessarily that Downey could not have asked a court of equity to revivify the mortgage security after it had become *functus officio* by his voluntary payment thereof, and to subrogate him to the rights of the mortgage creditors. And if, upon the facts, he could not have claimed such equitable relief, and surely he could not, it is very certain that his grantees, near or remote, could not be entitled to any such relief. The writer is of opinion, therefore, that the first ground upon which the appellant relies for the reversal of the judgment below, is not tenable and can not be sustained. *Richmond* v. *Marston*, 15 Ind. 134.

2. The second ground upon which a reversal is asked is,

that the appellant was entitled to be repaid the value of the improvements made upon the lot by him and his grantors, before the appellee could enforce the lien of his judgment against such lot. It is claimed that these improvements were thus made in good faith, under color of title, and in the belief that appellant and his grantors had good title, and without knowledge of appellee's judgment. Conceding all these matters to be true as stated, they constitute no valid or legal claim in appellant's favor against the appellee, for the value of such improvements, nor are they sufficient to show that the appellee ought not to be permitted to enforce the lien of his judgment against appellant's lot before he had been paid the value of the improvements. The appellant had constructive notice of appellee's judgment, and if he and his grantors did not have actual notice of the existence of the judgment, it was their misfortune, and not the fault of the appellee. The appellant's claim on this point can not be sustained. *Taylor* v. *Morgan*, 86 Ind. 295.

3. The last reason for which we are asked to reverse the judgment is, that the sale of the appellant's lot was invalid, because the other lots sold by Downey after the sale of appellant's lot, were not first exhausted. It was not enough that the other lots were offered merely; they must be actually sold before a legal sale could be made of the appellant's lot. We may well suppose that this point was not made below, but is presented here for the first time. *In support of appellant's position his counsel cite the cases of *Houston* v. *Houston*, 67 Ind. 276, *Edwards* v. *Applegate*, 70 Ind. 325, and *Hahn* v. *Behrman*, 73 Ind. 120. It is evident, however, that the precise question here presented was not considered or decided in either of the cases cited, although there are expressions in the opinion in each of the cases, which, if not limited, as they should be, to the facts of the case in hand, would seem to sustain the appellant's position. In the case now before us, it is shown that the sheriff, by the appellee's order, in part compliance at least with the equitable doctrine invoked by the ap-

pellant, offered first for sale each of the other lots, and received no bid therefor; and that he then, and not before, offered and sold the appellant's lot. The question for decision is this, was the sheriff compelled not only to offer but to sell and exhaust each of the other lots before he could make a legal and valid sale of the appellant's lot?

We think that this question ought to be, and must be, answered in the negative. It was the duty of the sheriff to make the money due on the execution. In compliance with the equitable rule referred to, in so far as he could comply therewith, he offered for sale each and all of the other lots and received no bid therefor. Having done this, which was all he could do, in attempted compliance with such rule, we think that it became his duty to offer and sell, if he could, the appellant's lot, and that the sale thus made was legal and valid. *Merritt* v. *Richey,* 97 Ind. 236.

The court did not err in its conclusion of law.

The judgment is affirmed, with costs.

ZOLLARS, J., concurs with the personal views of HOWK, J., in the above opinion.

Filed Mar. 17, 1883.

### DISSENTING OPINION.

ELLIOTT, J.—I think Ritter was entitled to be subrogated to the rights of the mortgagee to whom the purchase-money mortgage was executed. *Peet* v. *Beers,* 4 Ind. 46; *Spray* v. *Rodman,* 43 Ind. 225; *McKeage* v. *Hanover Fire Ins. Co.,* 81 N. Y. 38; *Sickles* v. *Flanagan,* 79 N. Y. 224; *Monticello, etc., Co.* v. *Loughry,* 72 Ind. 562, 566; *Ayers* v. *Adams,* 82 Ind. 109.

The lien of appellee's judgment was only on the execution debtor's equity of redemption, and Ritter, in asserting his right to avail himself of the purchase-money mortgage, leaves the lien as it was, and as his is the superior equity, that of a *bona fide* purchaser for full value, it should prevail. *Glidewell* v. *Spaugh,* 26 Ind. 319; *Monticello, etc., Co.* v. *Loughry, supra;*

*Manns* v. *Brookville Nat'l Bank,* 73 Ind. 243; *Sharpe* v. *Davis,* 76 Ind. 17.

The rights acquired by appellee were not greater than those owned by the person through whom he derived them all. *Rawson* v. *McJunkins,* 27 Ga. 432; *Colquitt* v. *Bonner,* 2 Ga. 155; *Scott* v. *Harkins,* 32 Ga. 302; *Himes* v. *Barnitz,* 8 Watts, 39; *Blydenburgh* v. *Thayer,* 1 Abb. Dec. 156; *De La Vergne* v. *Evertson,* 19 Am. Dec. 411; *Graves* v. *Woodbury,* 4 Hill, 559; *Chamberlin* v. *Day,* 3 Cow. 353; *Lockwood* v. *Bates,* 12 Am. Dec. 121; *Independent School Dist.* v. *Schreiner,* 46 Iowa, 172; *Burtis* v. *Cook,* 16 Iowa, 194; *Rea* v. *Forrest,* 88 Ill. 275; *Padfield* v. *Green,* 85 Ill. 529; *Jeffries* v. *Evans,* 6 B. Mon. 119; *Pierce* v. *Bent,* 69 Maine, 381; *Selz* v. *Unna,* 6 Wall. 327; *Harrison* v. *Andrews,* 18 Kan. 535, see auth. p. 542; *Swartz* v. *Stees,* 2 Kan. 236; *Downer* v. *South Royalton Bank,* 39 Vt. 25; *Finn* v. *Corbitt,* 36 Mich. 318; *Banning* v. *Edes,* 6 Minn. 402.

Filed Mar. 17, 1883. Petition for a rehearing overruled Dec. 11, 1884.