## REGISTER *v.* SOUTHERN STATES PHOSPHATE AND FERTILIZER COMPANY.

1. If one of two joint defendants in a judgment, based upon an obligation on which they were liable as principals, pays off the judgment with money or funds of both defendants, this is a payment of the judgment by both; and the lien of the judgment is thus extinguished, and the execution issued thereon becomes functus officio. When the defendant, so paying off such judgment and taking a transfer thereof and of the execution issued thereon to himself, afterwards transfers it to another who is seeking to enforce it by levy and sale of the property of the codefendant, the latter, by affidavit of illegality, can set up the payment of the judgment and execution against the second transferee of such judgment and execution.

2. Where one of two joint debtors who are codefendants in a judgment on which a fi. fa. issues, the judgment being based upon an obligation on which they are equally liable as principals, pays off such execution in

36

full, he may, by having such payment in full entered on the fi. fa., control and enforce the execution to compel his codefendant to contribute his half of the amount of such payment.

(*a*) A transferee of the joint debtor so paying off such execution would have a like right to enforce the same against the other co-obligor for the same purpose.

(*b*) An indebtedness by note or open account, due by the joint obligor paying off such judgment to his co-obligor, cannot be set off by the latter against such judgment, whether owned by the former or his transferee.

3. Where one of the defendants in such a judgment pays the same off in full and takes to himself an assignment in writing, from the plaintiff, of the judgment and execution, in which it is recited that he has paid off the judgment in full, and in which the assignor authorizes the clerk of the court in which the judgment was obtained to cancel the same of record as to the defendant paying off the judgment and execution, this does not amount to a release of the codefendant in the judgment.

(*a*) Such an assignment amounts only to a memorandum to the effect that the defendant to whom the judgment and execution were assigned has paid the same off in full, and that he is entitled to enforce the same against his codefendant for contribution.

(*b*) This case differs from *Warthen* v. *Mellon*, 132 *Ga.* 113 (63 S. E. 832, 131 Am. St. R. 184), and similar cases, where this court held that where one of the joint defendants pays off a fi. fa. and has the same transferred to him without having the amount of the payment made entered on the fi. fa., such transfer is a settlement of the fi. fa.; the transfer in the instant case reciting that the defendant had paid off the judgment in full.

4. An allegation in an affidavit of illegality, filed to stop the enforcement of an execution, that the execution had been paid off in full, was good against a general demurrer. By a special demurrer the plaintiff would have been entitled to take advantage of the fact that the allegation of payment was defective because it failed to state the time and amount of the payment and the person to whom it was made.

No. 4006. FEBRUARY 15, 1924.

The Court of Appeals (in Case No. 14546) requested instruction from the Supreme Court upon the following questions involved in this case:

On November 4, 1921, a judgment was rendered in favor of the Bank of Metter against E. J. Register and W. L. Jones, in a suit upon a note; and on December 8, 1921, an execution was issued thereon for $713.25 principal, $342.36 interest, with future interest at 8 per cent., $105.56 attorney's fees, and costs. On or prior to December 19, 1921, the following "transfer" and entry were made upon the fi. fa.: "Georgia, Candler County. The within fi. fa. having been paid in full by W. L. Jones, one of the joint obligors, the same is hereby transferred to him, together with the judg-

ment upon which the same is based. Without recourse on the Bank of Metter. The clerk is hereby authorized to cancel this fi. fa. on his records as to W. L. Jones. Bank of Metter, by L. H. Sewell, Cashier. J. L. Brown, attorney of record for plaintiff. Satisfied and cancelled as to W. L. Jones, Dec. 19, 1921. M. E. Everett, Clerk." Thereafter the fi. fa. was "transferred" by W. L. Jones to Southern States Phosphate & Fertilizer Co., the present defendant in error, as follows: "Georgia, Candler County. For and in consideration of the sum of $606.76, I hereby transfer, assign, and set over all my rights, interest, and title to the within fi. fa., together with the judgment upon which the same is based, to Southern States Phosphate and Fertilizer Co. This May 4, 1922. W. L. Jones, transferee." On June 6, 1922, at the instance of Southern States Phosphate and Fertilizer Co., the fi. fa. was levied upon property of E. J. Register, a codefendant in the judgment and in the fi. fa., the present plaintiff in error, who arrested the proceedings by an affidavit of illegality, which was stricken on motion.

1. Would the fact that, prior to the rendition of the judgment mentioned above, upon which the execution issued, one of the makers of the note on which the judgment was founded, namely, J., had in his hands certain "promissory notes, judgments, and money," the joint property of himself and the other maker of the note, namely, R., for the purpose of reducing such assets to cash and using the proceeds thereof in paying off the debt (subsequently merged in the judgment), and that he, J., did so reduce such assets to money in a sufficient amount to satisfy such debt and actually paid to the plaintiff in the judgment the amount thereof out of the funds so collected, though at the time taking a transfer of the fi. fa. to himself as indicated above, constitute in favor of R. a good ground of illegality to the levy of the fi. fa., at the instance of a transferee from J., in the absence of knowledge or notice of the facts in such second transferee?

2. Where one of two joint debtors, codefendants in a judgment upon which a fi. fa. has been issued, pays the execution in full and thereupon procures the same to be transferred to himself by the plaintiff in the judgment, and thereafter transfers the fi. fa. to another, does the mere fact that at the time of the transfer the transferee therein was indebted to his joint debtor in a sum in excess of the amount of the judgment constitute a good ground of

illegality in favor of such joint debtor to the levy of the fi. fa. upon his property at the instance of the second transferee?

3.   Where one of two joint debtors in a judgment upon which an execution is issued pays the same in full and thereupon takes a transfer and assignment of the fi. fa. and the judgment to himself in the form of the first transfer set out in the statement above, will the language therein that the clerk is authorized to cancel the fi. fa. as to the transferee, with the further fact that the clerk thereupon makes an entry of satisfaction as to such transferee on the fi. fa., operate to vitiate the transfer and to release a debtor who was jointly bound in the judgment and fi. fa. with the transferee, where such transfer and entry were made without the knowledge or consent of such joint debtor?

4.   Where a fi. fa. has been transferred by the plaintiff therein to one who subsequently transfers it to another, in the absence of a special demurrer does an allegation in an affidavit of illegality interposed by the debtor to a levy of the fi. fa. upon his property, "that said execution has been paid off," sufficiently allege a satisfaction and extinguishment of the fi. fa., as against such second transferee, though failing to show to whom the alleged· payment was made?   See *Rawson* v. *McJunkins,* 27 *Ga.* 432 (1); *Cohen* v. *Prater,* 56 *Ga.* 204, 207; *Ellis* v. *Dudley,* 19 *Ga. App.* 566 (91 S. E. 904).

*Travis & Travis, Charles Emory Smith,* and *C. W. Turner,* for plaintiff in error.

*Kirkland & Kirkland,* contra.

Hines, J.   1. If one of two joint defendants in a judgment pays it off with money or funds of both defendants, this is a payment of the judgment by both. It is an extinguishment of the judgment.   The judgment thus becomes functus officio, and is dead. So when one of the joint defendants, so paying the judgment, took an assignment of it to himself, and is proceeding to enforce its collection by levy and sale, he can be stopped by illegality setting up such payment of the execution.   *Boyd* v. *McFarlin,* 58 *Ga.* 208; *Flournoy* v. *Silman,* 59 *Ga.* 195; *McLendon* v. *Frost,* 59 *Ga.* 350; *Monroe* v. *Security Mutual Life Ins. Co.,* 127 *Ga.* 549 (56 S. E. 764); In *Babb* v. *Brumby,* 141 *Ga.* 792 (82 S. E. 249), this court held that where some of the joint defendants in a fi. fa. paid the same and had it transferred to themselves, taking the note of

another defendant for his share of the debt, which they negotiated and which was outstanding, the fi. fa. was discharged, and could not be enforced against the defendant who gave said note, nor his privies in estate. It seems clear that payment of a judgment by one of two joint defendants with funds of both, as between them, is an extinguishment of its lien. What is the effect of the payment of a judgment by one of two defendants, with their joint funds, who, instead of having the execution settled and cancelled, takes a transfer to himself from the plaintiff, and then transfers it to another who takes it without notice or knowledge of such payment? Any plaintiff or transferee may bona fide and for value transfer any judgment or execution to a third person; and in all cases the transferee of any judgment or execution shall have the same rights and be liable to the same equities, and subject to the same defenses, as the original plaintiff in judgment was. Civil Code (1910), § 5969. Can a defendant in an execution, having equities and defenses against an intermediate assignee, set the same up against a later assignee? A strong argument can be made in favor of this right. While the use of the language, "the original plaintiff in judgment," would seem at first blush to confine this right to the assertion of such equities and defenses only as the original defendant in the judgment could set up against the original plaintiff, this would seem to be sticking too closely to the letter, while destroying the spirit, of the statute. Upon the assignment of the judgment, the first transferee acquires the same rights and no more than the plaintiff had against the defendant in the judgment. He takes the assignment subject to the same equities and defenses as could be asserted against the plaintiff in the judgment. If such first assignee transfers the judgment to another, why can not the defendant set up the same equities and defenses against the subtransferee as he could against the original plaintiff?

The above section of the Code is based in part on the act of 1829, which provided that it "may be lawful for the plaintiff in any judgment or execution to sell or transfer the same by a written assignment or control." Cobb's Digest, 499. In *Price* v. *Bradford*, 5 *Ga.* 364, the question arose whether under this statute the assignee of a judgment could transfer the same to another. The language of this statute seems to confine the right to the plaintiff in execution alone; but this court, in that case, said: "This construction is

too literal. So literal that it robs the act of all its wisdom and all its utility. It kills the spirit." So it would seem that it would be too literal a construction of the above section of the Code to hold that the defendant could not set up equities and defenses, which he had against an intermediate assignee, against a subsequent transferee of a judgment. In *Price* v. *Bradford,* supra, this court held that each assignee of a judgment becomes a new or substituted plaintiff therein. It might well be said that such new plaintiff was the original plaintiff as to his assignee of the judgment; and thus he is made an original plaintiff within the meaning of this statute. Suppose that while the intermediate assignee of a judgment was the owner and holder thereof the defendant should pay to him the full amount due upon the judgment, and that then such intermediate transferee should assign the judgment to another, why should not the defendant be permitted to set up against the last transferee the payment of the judgment to the intermediate assignee? If the defendant by an assignment would not be deprived of the right to set up against the first transferee equities and defenses which he could assert against the original plaintiff in the judgment, it is hard to conceive any reason why he should be cut off from setting up equities and defenses which he has against any previous assignee of a judgment against the subsequent transferee thereof. There is no valid reason why he should be permitted to assert such equities and defenses in the one case and be denied the right to do so in the other case.

Judgments are not negotiable paper in the strict commercial sense, though assignable. *Heyward* v. *Finney,* 63 *Ga.* 353; *Western Bank* v. *Maverick Bank,* 90 *Ga.* 339, 344 (16 S. E. 942, 35 Am. St. R. 210). But, as we have said above, this question is not involved in answering the question propounded by the Court of Appeals. The defendant is not seeking to set up a defense, so far as payment is concerned, against any intermediate assignee of this judgment; but he is seeking to set up the defense of payment against the original plaintiff in the judgment. He alleges that the judgment was paid to this original plaintiff. This defense he could set up against the original plaintiff, though the fi. fa. had been transferred under the very terms of this section of the Code. It would be an unreasonable construction of this statute to hold that he would lose such defense if the execution had been transferred more than once.

If he could assert this defense against the first assignee of the judgment, we can see no reason why he could not assert it against any other subassignee. Clearly an assignee of an execution takes it subject to any defense which the defendant might have set up against the original plaintiff, whether such assignee took with or without notice of the defense. *Colquitt* v. *Bonner,* 2 *Ga.* 155; *Rawson* v. *McJunkins,* 27 *Ga.* 432; *Scott* v. *Harkins,* 32 *Ga.* 302; *Ligon* v. *Rogers,* 12 *Ga.* 281, 291; *Morris* v. *Bradford,* 19 *Ga.* 527, 533; *Hammett* v. *Christie,* 21 *Ga.* 251, 253. So, when Jones paid off this execution with funds of Jones and Register, such payment extinguished the lien of the judgment; and when Jones took from the plaintiff therein an assignment thereof and afterwards transferred the execution to another, Register could set up by illegality such payment of the execution and defeat Jones's assignee, although the latter took without notice of such defense. The first question, therefore, is answered in the affirmative.

2. Where one of two joint debtors, who are codefendants in a judgment on which a fi. fa. issues, pays up such execution in full, he may, by having such payment entered on the fi. fa., control and enforce the execution to compel his codefendant to contribute his half of the amount of such payment. Civil Code (1910), § 5971. A transferee of the joint debtor so paying off such execution would have a like right to enforce the same against the other co-obligor for the same purpose. *O'Bryan* v. *Neel,* 84 *Ga.* 134 (10 S. E. 598). This being so, can an indebtedness by note or open account due by the joint obligor, paying off such judgment, to his co-obligor, be set off against the transferee of the judgment and execution issuing thereon by the former? If the execution had been proceeding in favor of Jones against Register for contribution, Register could not set off against the judgment by affidavit of illegality an indebtedness by note or account due to him by Jones, so as to arrest the execution. *Hawkins* v. *County of Sumter,* 57 *Ga.* 166; *Leavel* v. *Frey,* 133 *Ga.* 723 (66 S. E. 916); *Wood* v. *City of Rome,* 24 *Ga. App.* 115 (100 S. E. 74). As such set-off could not be pleaded by an affidavit of illegality against the joint obligor paying off such fi. fa., by the other joint obligor, it certainly cannot be pleaded by the latter against the assignee of the former. So the second question is answered in the negative.

3. Does the instrument which is set out in full in the first

question propounded by the Court of Appeals, and which recited that the fi. fa. against the joint obligors had been paid off in full by one of them, and which purported to be a transfer of the execution and the judgment upon which it was based to the joint obligor so ·paying it off in full, and which authorized the clerk to cancel the fi. fa. on his records as to the defendant so paying off the same, amount to a release of the other joint obligor? Undeniably a release by operation of law takes place when a creditor releases another who is bound jointly with the debtor so released. Civil Code (1910), § 4309; *Campbell* v. *Brown,* 20 *Ga.* 415; *Powell* v. *Davis,* 60 *Ga.* 70. On its face this instrument does not purport to be a release of one of the joint obligors. On the contrary it recites that the obligor alleged to be released had paid the full amount due upon the judgment; and in consideration of such full payment the plaintiff transferred to him the execution with the judgment on which it issued. This did not amount to a settlement of the execution; and clearly authorized the defendant paying it off in full to proceed, under the Civil Code (1910), § 5971, for contribution. ·*Wallace* v. *Boddie,* 138 *Ga.* 30 (74 S. E. 756). The case of *Warthen* v. *Melton,* 132 *Ga.* 113 (supra), on which counsel for the plaintiff in error relies, and similar cases, were distinguished in *Wallace* v. *Boddie,* supra. The fact that this instrument authorized the clerk to cancel the execution·of record so far as the joint defendant who had paid it off in full was concerned, and the clerk's cancellation of the execution as to him, did not amount to a settlement of the fi. fa. or to a release of the other joint defendant. As to the joint defendant who paid off the execution in full, the execution was settled and could never be enforced against him. · The authority given by the original plaintiff therein to the clerk to cancel the execution as to this defendant, and the cancellation thereof by the clerk as to him, had no greater effect upon the vitality of the execution than the law itself would give to it, in view of the payment thereof by such joint defendant. So we are of the opinion that the other joint defendant was not released by this instrument; and the third question is answered in the negative.

4. The defendant in execution alleged, in his affidavit of illegality, "that said execution has been paid off." Is this a sufficient plea of payment to withstand a general demurrer? A plea of payment which fails to allege with reasonable certainty when, how, and

to whom the payment was made is insufficient; and if advantage is taken of these defects by a proper demurrer, it should be stricken, unless amended. *Baer* v. *Christian*, 83 *Ga.* 322 (9 S. E. 790); *O'Neal* v. *Phillips*, 83 *Ga.* 556 (10 S. E. 352); *Wortham* v. *Sinclair*, 98 *Ga.* 173 (25 S. E. 414). The proper demurrer to reach defects of this kind is a special demurrer. The test of the sufficiency of a plea of payment to withstand a general demurrer is whether the plaintiff can admit all of its allegations and still be entitled to recover. *Pullman Co.* v. *Martin*, 92 *Ga.* 161 (18 S. E. 364); *Georgia R &c. Co.* v. *Rayford*, 115 *Ga.* 937 (42 S. E. 234). The plaintiff in this case could hardly admit that the execution was paid and still be entitled to recover. In *Baer* v. *Christian*, supra, this court said: "We think the trial judge was right in overruling the demurrer to the second plea, to wit, the plea of payment, inasmuch as the demurrer was general and did not specify the defect in the plea. It was defective in that it did not specify the time of payment, but this ought to have been pointed out by the demurrer." If such special demurrer had been filed, the affidavit of illegality could have been amended, and the plea of payment perfected. Civil Code (1910), § 5704; *Inman* v. *Miller*, 71 *Ga.* 293 (3). These defects could not be reached by general demurrer; and we answer the fourth question in the affirmative. *All the Justices concur.*