Price *vs.* Bradford.

No. 40.—PATRICK PRICE, plaintiff in error, *vs.* JOSEPH A. BRADFORD, defendant.

[1.] Under the Act of 1829, authorising the transfer and assignment of judgménts and executions, they are negotiable, like promissory notes payable to order; and that Act does not repeal the Common Law rule, which authorises the assignment of the equitable interest in judgments.

Motion to distribute money, in Crawford Superior Court. Decided by Judge FLOYD, February Term, 1848.

The question in this cause arose upon a motion to distribute money in the Sheriff's hands between different *fi. fas.* claiming the same. Certain *fi. fas.* which had been *twice* transferred, were ruled out by the Court, the Court holding that the second transfer amounted to a payment. This decision was excepted to, and is now alleged to be erroneous.

HALL & WIMBERLY, for plaintiff in error, contended—

1st. That the Act of 1829 gives the plaintiff the right to transfer the *fi. fa.* and subrogates the transferee to the rights of the plaintiff. *Prince*, 464.

Price *vs.* Bradford.

2d. Statutes in derogation of the Common Law to be strictly construed, *(Stell vs. Glass,* 1 *Kelly,* 475,) and the rules which ordinarily govern in the construction and which are resorted to by Courts to effectuate the rights of parties. *See Cobbett's case,* 1 *Coke, R.* 88, *a,* note *g,* 2. *Chudlugh's case, Ib.* 134, *a. Herbert's case,* 3 *Ib.* 136, *note a. Farmer's case, Ib.* 78 *a.* 11 *Mod. R.* 150.

3d. The issue here presented was, fraud or no fraud, and should have been submitted to the jury. 18 *Wend. R.* 353, 375. 1 *Greenleaf's Ev. sec.* 80. *Peck vs. Land,* 2 *Kelly,* 12.

4th. That the right to assign choses in action, among which are judgments and *fi. fas.* existed at Common Law, and that a subsequent Statute passed to confer upon the plaintiff's assignee, the power of controlling the *fi. fas.* and collecting it in his own name, does not take away the Common Law right of transfer. *See* 1 *Tomlin's Law Dict. tit. Assignment. Foster's case,* 11 *Coke,* 63 *a,* 63 *b,* 64 *a,* 64 *b. Brown vs. Chapman,* 3 *Bun.* 1418. 3 *Kelly,* 3. *Morgan vs, Davis,* 2 *Harr. & McHen.* 9. *Mills vs. Mercer and wife, Dudley's R.* 158. *Barbou on Set-Off,* 58. *Howell vs. McIvers,* 4, *T. R.* 690. *Heath vs. Hull,* 4 *Taunt.* 326. *Prescott vs. Hull,* 17 *J. R.* 284. *Ford vs. Stewart,* 19 *J. B.* 342. *Dawes vs. Boylston,* 9 *Mass. R.* 337. *Brown vs. the Maine Bank,* 11 *Ib.* 153. 3 *Stew. R.* 260. 1 *Hawks,* 483. 1 *McCord,* 80. 2 *Ib.* 318. *Comyn's Dig. tit. Assignment a. Spencer's case,* 5 *Coke, R.* 176.

5th. That Courts of Law will recognise assignments, and make use of the name of the assignor to enforce the rights of the assignee, and that Courts of Equity will enforce those rights without the use of the assignor's name. 2 *Story's Eq. Ju. sec.* 1056. *Barbour on Set-Off,* 57, 58. 19 *J. R. et sup.* 8 *Ib.* 152. 3 *Kelly,* 159. 2 *Story's Eq. Ju. sec.* 1057, *and cases in note* 2.

HUNTER, for defendants in error.

We contend that the Act authorising the transfer of judgments contemplates but one transfer, and that from the original party plaintiff. The words of the Act are, "that the plaintiff, &c., may transfer." Now according to every rule of construction, we contend that the right to transfer a judgment, is restricted to the original party plaintiff. We rely upon the following decisions made by this Court. 2 *Kelly,* 155. 3 *Kelly,* 146. 1 *Kelly,* 5, 6,

171,2.   Also upon the following authorities : 1 *Maddock's Ch. Pr.* 545.   1 *Ves. jr.* 463.

*By the Court.*—NISBET, J., delivering the opinion.

[1.] The presiding Judge held, in this case, that under the Act of 1829, the first assignee of a judgment has no authority to trans-fer it to a third person for value, and if he does, it is a payment, and the judgment "*functus officio.*"   We entertain a different opinion, and reverse the decision.   To a proper construction of the Act of 1829, it becomes necessary to enquire how stood the Common Law before its passage.

A chose in action was not assignable at Common Law, so as to transfer the legal title.   But the interest in a chose was assigna-ble.   And Courts of Equity will protect that interest, and allow the assignee to proceed in his own name.   At *Law,* when it beccame necessary to sue, the assignee was compelled to use the name of the assignor.   Courts of Law will, in this way, protect the rights of the assignor.   2 *Story's Eq. Jurisprudence, sects.* 1056, 1057.   1 *Keen R.* 63.   *Ryall vs. Rolle,* 1 *Vesey,* 353 *to* 362. *Welch vs. Mandeville,* 1 *Wheat. R.* 235.   5 *Ibid,* 277 *to* 283. *Tiernan vs. Jackson,* 5 *Peters,* 597 *to* 602.   1 *J. C.* 51.   *Wardell vs. Eden,* 2 *J. C.* 121.   *Van Vechten vs. Graves,* 4 *J. R.* 403.   *Lit-tlefied vs. Story,* 3 *J. R.* 425.   *Anderson vs. Van Allen,* 12 *J. R.* 343.   *Briggs vs. Dorr,* 19 *J. R.* 95.   *R. & G. Barker vs. Bethune,* 3 *Kelly,* 159.   1 *Pick.* 594.   15 *Mass.* 485.   5 *S. & P.* 60.   7 *Conn.* 399.   2 *Green.* 510.

A chose in action may be assigned by parol upon delivery and payment of a consideration.   *Prescott vs. Hull,* 17 *J. R.* 284.   *Can-field vs. Monger,* 12 *J. R.* 346.   *Dawson vs. Cowls,* 16 *J. R.* 51. 19 *J. R.* 342.   11 *Ibid,* 538.   1 *Ibid,* 580.   *Roberts on Frauds,* 275.   *Mills vs. Mercer and Wife, Dudley,* 158.   9 *Mass. R.* 337. 4 *T. R.* 690.   5 *Greenlf.* 282.   2 *Ibid,* 147.

It is not necessary that obligations or covenants should be as-signed by writing under seal.   15 *Mass.* 485.   16 *John. R.* 51. *Howell vs. Bulkley,* 1 *N. & M.* 250.

In *Ford vs. Stuart,* 19 *John. R.* 342, it is settled that a judgment, so far as concerns its negotiability, is a chose in action, and may be assigned by parol.   See also 15 *Mass.* 481.   9 *Ib.* 133. 11 *Ib.* 153.   4 *Litt.* 435.

From these positions we say, that at Common Law, the interest in a judgment was assignable; which interest could alone be protected at Law, through the use of the name of the assignor. In other words, the legal title could not be passed by assignment, and the purchaser acquired only an equitable interest which Courts of Law could protect only by the use of the name of the assignor.

Anterior then to the passage of the Act of 1829, a party plaintiff in Georgia, although he could assign his interest in a judgment, could not assign the legal title thereto, so as to enable the assignee to proceed upon and collect it, in a Court of Law, in his own name.

Here is the old law. The mischief was that the legal title to a judgment was not assignable, so as to enable the assignee to proceed upon it in his own name. The mischief was that he was compelled to go into a Court of Chancery to assert his rights, or rely upon the imperfect remedies which a Court of Law would afford, through the use of the name of the assignor. It is not, I apprehend, to be questioned, that at Common Law, the interest, which the assignee thus acquired, was itself by him assignable, and was indefinitely transferable, "*toties quoties.*" Now we think that the remedy applied by our Legislature in the Act of 1829, was to enable a party plaintiff, by written assignment, to transfer not only the equitable interest in, but the legal title to a judgment, to clothe the assignee with all his rights, to impress upon the judgment a legal negotiability, and to make the title good in the hands of any purchaser subsequent to the first. I state these propositions generally, without regard to exceptions or qualifications, which may grow out of the peculiar circumstances of each case of transfer or of the rights of third persons, and without reference to the equities which may spring up between the holder and the debtor; it being the business of this opinion to demonstrate general propositions, without stopping to illustrate exceptions. I only remark that by the Statute and before the Statute, a judgment fraudulently kept open, after payment by the debtor, would be void.

The Act of 1829, is entitled, " An Act to authorise the assignment and transfer of judgments and executions, and to make certain and uniform the practice with regard to the same," and is in the following words, to-wit: " From and after the passage

of this Act, it shall and may be lawful for the plaintiff in any judgment or execution, to sell or transfer the same by written assignment or control, and said sale or assignment shall not be considered a discharge or satisfaction of said execution, but the assignee may proceed to collect the same for his own use and benefit, in as full and ample a manner as the plaintiff could have done, if no such transfer or assignment had been made.

"Sec. 2d. Nothing in this Act contained shall be construed, as to authorize the collection of any execution, which may have been paid off by the defendant or his agent, and kept open for the purpose of defrauding other creditors." *Prince*, 464, 5.

It is argued, that this Statute, being in derogation of common right, must be construed strictly. I do not see wherein it is in derogation of common right—it is not even in repeal of the Common Law. It enlarges the Common Law—it adds to the rights of the Common Law; for, whereas, by the Common Law, the citizen could not convey the legal title to a judgment, by this Act he may convey it. The Common Law right, to assign the equitable interest in a chose, is not repealed; it continues. What is an act in derogation of common right? One which repeals the general law in favor of a particular person or class of persons, to the exclusion of all others. As, for example, the law of our State, which gives a special lien to master mechanics; or those Statutes which confer especial privileges upon incorporated bodies. They are to be construed strictly; so strictly that in many cases a Court is not at liberty to depart from the letter of the act. This is, to my mind, a remedial and enlarging Statute, and is to receive a liberal construction. It enlarges the Common Law rights, not of one citizen, or one class of citizens, but of all. Its benefits—the remedies which it affords, are common to all—are open to all. Every individual, and any individual, may, under it, *sell or transfer* his judgment or execution. It is not only a remedial and enlarging Statute, but, to my mind, as I shall show hereafter, highly beneficial. In the construction of such Statutes, we are not confined to the letter—are not limited to a strict construction. We are to look to the spirit—the intention of the Legislature, and sometimes to bring within the equity of the act, cases excluded by its terms, because such cases are within the mischief proposed to be remedied. "It is the duty of Judges, (says Lord Bacon, speaking of remedial Statutes,) to

put such a construction upon a Statute, as may redress the mischief, guard against all subtle inventions and evasions for the continuance of the mischief, *pro privato commodo*, and give life and strength to the remedy, *pro bono publico*, according to the true intent of the makers of the law." *Bacon's Abridgement title Construction of Statutes*, 8.   3 *Rep.* 7.   1 *Ibid,.* 123.   11 *Rep.* 71. *Cro. Car.* 533.   We propose to give *life* and *strength* to this Act for the public good.   See *Bailey vs. Lumpkin*, 1 *Kelly*, 404 *and 5, and authorities there cited.*

It is admitted that by virtue of this Act, the plaintiffs in the judgment may assign it.   This is according to the letter, for it declares that it *shall be lawful for the plaintiffs in any judgment or execution, to sell or transfer the same.*   The decision of the Circuit Judge does not controvert this.   But it claims that the Act stops right there; that the authority under it, to sell or transfer, is confined to the plaintiff, and the moment the transferee from him is satisfied, the judgment and execution having performed their functions, having fulfilled their destiny, die.   The whole argument in favor of this view of the subject consists in this, to wit, the Legislature have not said in so many words, that any body but the plaintiff may assign a judgment, and not having so said in terms, no one but the plaintiff has authority under the Act to assign it.   This construction is too literal.   So literal, that it robs the Act of all its wisdom and all its utility; it kills the spirit.   If the object of the Statute be thus limited, the Legislature is exhibited as having passed a useless law, without any reasonable object.   But if a more enlarged meaning be given to it —if it be so construed as to give negotiability to judgments, why then, we have a reason and an object, worthy the most enlightened Senate.

I think I cannot be mistaken, when I say that the Legislature, in the Act before us, intended to make judgments and executions negotiable by written assignment, as are notes or bills payable to order.   They intended to confer upon them the attributes of a negotiable security—to give to any purchaser, for value, an absolute property in them.   To make that property alienable.   To increase the number of transferable securities, and thus promote the ends of trade and commerce.   To invite investment in this kind of security permanently—perhaps an additional and yet more commendable object was to prevent the coercion of payment up-

on defendants.    To enable a needy plaintiff to realize cash upon his judgment, by sale to him who could wait for re-payment, or to him to whom a negotiable security would be as available as money.    Such objects were not fully attained by the Common Law, for although the interest in judgments was assignable, yet the legal title was not, and therein their negotiability was restrained.    Such objects, as I have before suggested, make this Statute highly beneficial.    They are in accordance with the business habits of our people—are humane, safe, and commend the wisdom of the General Assembly.

That such was the intention of the Legislature, may be inferred from the title, which, in general terms, declares it to be an Act " to authorize the assignment and transfer of judgments and executions," not by the plaintiff alone, but generally.    I admit that the title and preamble to an act can only be resorted to when the body of the Act is ambiguous, and that in this case, there is no ambiguity in the letter of the Statute.    There is, however, ambiguity as to the spirit and intention.    It is so ambiguous as to have given rise to various constructions by the Circuit Courts.

Again, it is not denied but that an assignment by the plaintiff subrogates his assignee to all his rights in the judgment.    One of these rights is the authority to assign.    *That* goes with the judgment.    If the authority in him is conceded, it is difficult to believe that he does not transmit it.    This Court has held that a surety who pays a judgment, and takes the control of it, under our Statutes, is subrogated to all the rights of the plaintiff.    So here, we believe a purchaser from the plaintiff, *bona fide*, for value, is subrogated to all the rights of the plaintiff in the judgment.    He stands in his shoes.    He is entitled, by the Act, to collect it.    The plaintiff is displaced, and he located in his seat.    He is the plaintiff.    The defendant has a right so to regard him, and with notice of the assignment an acquittance from the former plaintiff would be no discharge.    The assignee alone can grant a discharge.    So complete is the subrogation, that the assignor is as though he had never been plaintiff.    The Statute authorizes this complete substitution; it places the assignee in the place of the plaintiff.    As he there stands, what are his rights?    All which belonged to the plaintiff.    One of these is the statutory right of assignment.

As he there stands, he is clothed with the absolute property in the judgment.    Now, one of the rights inherent in property, is

that of alienation. It exists as matter of course, and may be exercised unless restrained by law. Once admit property in the assignee, and it seems clear that he may sell his property. It is true that, at Common Law, the alienation of a judgment is restricted, but this judgment comes to him as a negotiable security. It comes to him with its negotiability unrestricted. And thus, as often as the assignment is made, the subrogation takes place with all its attendant rights.

But a more satisfactory view of this Statute, to my mind, is the following. We have a right to believe that the Legislature intended to apply a remedy commensurate with the mischief.

One of the most usual and familiar rules of construction is to look to the mischief. We are directed to look there in order to ascertain the extent of the remedy. And when we have measured the mischief and learned its length and breath and capacity, we are prepared to determine also the dimensions of the remedy. It is not a fair inference that the Legislature, when undertaking to remedy a mischief of the Common Law, intended to correct it in part only. And it is a fair inference that, going to work to remedy a mischief, it was the purpose of the Legislature to make the remedy as large as the mischief. This is not a hypothesis of our own, it is a rule of construction binding upon the Courts. Now the mischief of the old law was not alone that the plaintiff could not assign a judgment so as to convey the legal title, but the mischief farther was, that this assignee of the equitable interest in it, could not transfer the legal title. The remedy, therefore, must be construed to extend to the assignee as well as to the original plaintiff.

At all events, to say the least of it, the case of the assignee is within the equity of the Statute. If there be a good reason why the plaintiff is authorised to make the transfer, the very same reason, in all its strength, applies to his assignee, and to all subsequent assignees. Can any one assign a reason, founded in policy, or law, or equity, why the Legislature should make a judgment negotiable from the plaintiff to his purchaser, and there arrest its negotiability? Why authorise one sale and no more? No, we have a right to say that the Legislature in applying a remdy intended to cover the whole mischief. If, however, this construction of the Statute be unsound, which we deny, yet the Court erred in ruling that a transfer by the first assignee for value, was a payment of the judgment, and extinguished it.

Price *vs.* Bradford.

At Common Law, the equitable interest, as we have seen, was assignable, not only by the plaintiff himself, but by any subsubsequent assignee, which interest both a Court of Equity and of Law, would protect. Aside, then, from the Act of 1829, the purchaser from the first assignee, who presented these executions to claim the money in the hands of the Court for distribution, had in them an interest which it was the duty of the Court to protect. The distribution of money is an equitable proceeding. The Court is, for the occasion, acting as Chancellor. As such he ought to have recognised and protected the equitable interest of the holder in the executions. The Act of 1829 does not, as I have before said, repeal the Common Law, but is an enlargement of it.

It is not pretended that these executions were fraudulently kept open—if they were, then an issue, as to that fact, ought to have been formed and sent to a jury for trial.

Let the judgment be reversed.

Per LUMPKIN, Judge.

Even if the Act of 1829 did not authorise a *second* transfer of an execution, so as to vest the legal right in the assignee, *(and I am not prepared to say that it does,)* still, I would concur in the judgment of reversal. The *second* assignee would then stand just where the *first* did at Common Law ; and his interest would be protected in Equity. Its purchase by him would be no payment or extinguishment of the debt, so far as the defendant is concerned; and a motion to distribute money being, according to the practice in our Courts, in the nature of a proceeding in Chancery, the rights of Price, the plaintiff in error, should not have been disregarded.