## BUTNER *v.* BOIFEUILLET.

100 743
104 545
100 743
f110 802
100 743
114 510
100 743
e129 472

1. The repeal of certain provisions incorporated in the charter of a municipal corporation, which are enacted in the course of a legislative revision and restatement of prior charter provisions bearing upon the same general subject, and expressed in substantially the same language, does not of itself operate as a revival of the same or similar provisions of the prior charter; upon the repeal of the revising statute, the re-enactment of such provisions was necessary to restore their force as law.

2. Where by the provisions of such revising statute an office existing under the prior statute was recognized and recreated, and thereafter such provisions of the revising statute were in turn repealed, the effect of such repeal was to abolish the office, and this is true notwithstanding the repealing act in terms re-enacted certain other provisions of the same section of the charter by which the office abolished was created, and provided for the election by the municipal authorities of another officer corresponding in title with that of the incumbent of the office which had existed under the repealed statute.

3. The act to amend the charter of the city of Macon in certain specified particulars, and for other purposes, approved December 11th, 1896, in so far as it deals with the office of "chief of police" for that city, does not contravene that provision of the constitution of this State which prohibits the passage of an act by the General Assembly containing matter variant from that expressed in the title.

4. The act in question repeals so much of the act approved November 21st, 1893, as creates a new charter for the city of Macon, and as establishes the office of "chief of police" as a distinctive office; and as a consequence, that particular office, as it theretofore existed under that and previous charters of the city of Macon, was abolished, and the right of the relator to exercise its functions, under an election had in pursuance of that and the previous charters of such city, was extin-

guished. The title of the relator to the office which he seeks having been extinguished by the repeal of the law creating the office, the court did not err in refusing to allow the information quo warranto to be filed.

Argued March 4-5,—Decided March 29, 1897.

Refusal of quo warranto. Before Judge Felton. Bibb county. January 23, 1897.

*Estes & Jones*, for plaintiff. *Minter Wimberly, Dessau, Bartlett & Ellis* and *Robert Hodges*, for defendant.

ATKINSON, Justice.

The plaintiff in error filed a petition praying permission to file an information against the defendant, and that the writ quo warranto do issue to inquire upon what authority he was exercising the duties of the office of chief of police of the city of Macon. The petitioner alleged, that on December 16th, 1895, he was duly elected to the office of chief of police of said city, and qualified as such; that the term for which he was elected was two years next ensuing the date of his election; that upon qualifying, he entered upon the discharge of his duties, and continued to perform them until December 31st, 1896, and that notwithstanding his rights in the premises, the defendant, on the date last named, usurped, and thenceforth held, and continued to exercise the duties of the office of chief of police of the city of Macon, denying to the petitioner the right to enjoy the office in question. The defendant answered denying that the plaintiff had a legal title to this office. The election of the plaintiff in error, and his qualification, as stated in the petition, were admitted; but it was insisted, that subsequent to his election, the General Assembly, by an act approved December 11th, 1896, had repealed the provisions of the charter of the city of Macon, under and by virtue of which the plaintiff was elected chief of police, and thereby abolished the office of chief of police, thus extinguishing whatever title plaintiff may have had to that office, and that by virtue of an election held subsequent to the act above men-

tioned, the defendant held the office of chief of police, as recognized and created by the terms of that act.

Upon the hearing, the trial judge had before him the provisions of the various acts incorporating the city of Macon, which will be hereafter referred to; certain other documentary evidence showing the adoption by popular vote of the provisions of the act of 1896, in so far as they applied to the office of chief of police and the police commission of the city, and likewise showing the action of the mayor and council in electing the defendant to the office, the duties of which he was then and is now exercising. The trial judge reached the conclusion that the plaintiff had not prima facie established a title to the office by the terms of the petition, and therefore denied to him the right to file the information as prayed. To this judgment of the presiding judge the plaintiff excepted; and we are now to consider whether error was committed.

1, 2. To a correct understanding of the questions made in this case, it will be necessary to state in some detail the history of the legislation by which charter powers have been conferred upon the city of Macon. Prior to the year 1871, the original charter of the city of Macon had undergone many changes, in consequence of the passage, from time to time, of acts by the General Assembly modifying and enlarging the powers conferred upon that municipal corporation. By an act approved December 11th, 1871, however, the General Assembly enacted a statute which was entitled, "An act to amend an act entitled an act to alter and amend the several acts incorporating the city of Macon, approved December 27th, 1847, and the several acts amendatory thereto; to grant additional powers to the Mayor and Council of the City of Macon, and for other purposes." By that act the office of chief of police was established as a distinctive municipal office, his title resting upon direct and express legislative action, which prescribed the duties of his office, provided for the manner of his election, and fixed his term.

That act prescribed in terms, "That a chief of police, who-shall be ex officio marshal of said city, shall be elected by said mayor and aldermen at their first meeting after said election, or within two weeks thereafter. The term of said chief of police shall be the same as that for which said mayor and aldermen are elected; and he shall give a bond with two or more good securities in the sum of ($15,000.00) fifteen thousand dollars, for the faithful performance of his duties. as chief of police and marshal of the city of Macon. He may be dismissed at any time by the vote of a majority of the members of the council, for malpractice in office, neglect of duty, drunkenness or other improper conduct, to be judged of by the council; and in this event a successor shall. be elected to fill his unexpired term. In case of the resig-nation, removal, death or disability of the chief of police, the police officers of said city next in rank shall perform the duties of said officer until the removal of said disability, or until a successor shall have been elected to fill the unex-pired term." (Acts 1871-1872, p. 119.)

By an act approved November 21st, 1893, the General Assembly, in more comprehensive terms than had been theretofore employed in any of the previous acts respecting the city of Macon, granted a new charter to it. The act then passed was entitled, "An act to create a new charter for the city of Macon, to consolidate the acts relating to the rights and powers of said corporation, and for other pur-poses"; and at its conclusion provided, "That all laws and. parts of laws in conflict with this act be, and the same are, hereby repealed." By the 32d section of that act it was-provided, "That the police force of the city shall consist of a chief of police, two lieutenants, and such other officers. and men as the mayor and council may by ordinance pre-scribe.. The term of office of the chief of police and the-two lieutenants shall be for two years, but such officers shall' be subject to removal, as hereinbefore provided." It cre-ated a board of police commissioners, who were authorized

to elect the police officers, including the chief of police, whose office was created by the terms of that act. (Acts of 1893, p. 240.)

On the 11th day of December, 1896, the General Assembly passed still another act, which was entitled, "An act to amend the charter of Macon, relating to the law now governing board of public works, the police commission, the fire commission; to provide for deficiencies in the revenue of the city; to provide for compensation of the board of health; and giving authority to the mayor and council providing for the paving of streets, alleys and sidewalks of said city, and for other purposes." By terms of that act the General Assembly repealed section 32 of the act of 1893, providing, however, that before the repealing statute should become operative, the question should be submitted to a popular vote. This was done; and the mayor and council, conceiving that the office of chief of police had been abolished by the repeal of the provisions of the charter under which it was created, proceeded to elect a new chief of police, which last action they were authorized to take under the provisions of the act of 1896.

The plaintiff in error contended first, that the act of 1896 was not intended to, and did not repeal the provisions of the act of 1893, creating the office of chief of police; second, and that even if the act of 1896 was constitutional, and the provision of the act of 1893 relating to that office was in fact repealed, the legal effect of that repeal was to restore as operative law the provision of the act of 1871, which created the office of chief of police for the city of Macon as a distinctive municipal office; that the act of 1896, in so far as it undertook to repeal the act of 1893, was inoperative, for the reason that, in so far as the act affected the office of chief of police, it contained matter different from that expressed in the title, and was therefore unconstitutional; and consequently that if the act of 1896 did not repeal the act of 1893, or was itself unconstitutional, the office of chief of

police, to which he had been elected, was still existing, and the mayor and council had no power to elect a new officer to that office during the term for which he was elected, or if the act of 1896 were effective as a repeal of the act of 1893, he would still be entitled to the office, under the provisions of the act of 1871.

We will first enquire whether the act of 1896 repealed the act of 1893, and if so, whether the repeal of that act had the effect to revive the provisions of the act of 1871. It cannot be doubted that the act of 1896, if constitutional, and concerning that question we will hereinafter inquire, repealed the provisions of section 32 of the act of 1893. We are not left to implication to determine that question, for section 32 of the act of 1893 is stated in the body of the act of 1896 in totidem verbis, and the General Assembly declared that said provision of the charter shall be "and the same is hereby repealed," following that with the proviso, that, touching that provision, the mayor and council should by popular vote ascertain the wishes of the people of Macon with respect thereto, and if by popular vote it should be so decreed, that that section of the act should thenceforth be of no force and effect. It will be borne in mind that the section of the charter of Macon above referred to was one which, under the new order of things established by the grant of a new charter to the city of Macon under the act of 1893, created the office of chief of police. The ratification of this legislative provision by popular vote abolished the law under which the office of chief of police, as a distinctive municipal office, was created, and as effectually extinguished it as though no such office had ever existed. Concerning this latter proposition there can be no serious question, unless the repeal of the provisions of the act of 1893 operated to restore as law the pre-existing provisions bearing upon the same subject, which were contained in the act of 1871. While the general rule seems to be that where the provisions of an act, repealing a prior statute upon the

same general subject, are in turn themselves repealed, such repeal operates to restore to their efficacy as law the provisions of the prior repealed statute, such general rule is not without clearly defined and well recognized exceptions. The rule itself rests upon the theory, that each expression of the legislative mind represents the legislative intent at the time of that expression, and that the repealing statute indicates a change of the legislative purpose as expressed in the prior law, and, therefore, when the repealing statute is in turn repealed, without any reference to the pre-existing law, the presumption is that the legislature intended by the repeal to restore the order of things existing under the repealed statute; but this rule can have no application in a case where the statute repeals absolutely a prior existing law, and substitutes for it another and more comprehensive scheme of legislation, which undertakes to deal with the whole subject to which the prior statute relates. Accordingly it has been held, that "the repeal of a statute which was a revision of and a substitute for a former act to the same effect which was, therefore, repealed, cannot be deemed to revive the previous act; for this would be plainly contrary to the intention of the legislature." So also, "where a statutory provision has been repealed without change in the amendatory act and the latter is afterwards repealed, the original provision is repealed also." Sutherland on Statutory Construction, p. 229. One of the best practical illustrations of this rule is to be found in our code, which is intended to, and does contain a complete revision and restatement of the law bearing upon the various subjects upon which the General Assembly has seen proper to legislate. It could not be supposed that in a given case where the legislature passed an act repealing a section of the code, its purpose was to revive the provisions of previous acts of the General Assembly which had been incorporated in that section of the code. In such a case, the contrary presumption would arise, that the General Assembly intended a repeal of all of the statutory provisions upon that subject.

The act of 1893, according to its title, was intended to re-create the city of Macon as a corporate entity, to endow it with a new life as distinguished from the old. It expressly repealed its previous charters, and thereby extinguished it as a corporate being, and even without an express repeal of the previous charter, the grant of a new one re-created the city of Macon, and would have had the effect to repeal the prior charter provisions bearing upon the same subject. This was held in the case of Butler *v.* Russel, 3 Clifford, 251, in which case Justice Clifford, of the Supreme Court of the United States, presiding on the circuit bench for the first circuit, laid down the rule to be as follows: "Where the pro-visions of the old statute are revised in the later enactment, and where the later statute was intended to prescribe the only rules upon the subject, the subsequent is held to repeal the former statute. When a revising statute covers the whole subject-matter of antecedent statutes, it virtually re-peals the former enactments, without any express provision to that effect. Where some parts of the revised statute are omitted in the new law, they are not, in general, to be re-garded as left in operation if it clearly appear to have been the intention of the legislature to cover the whole subject by the revision." So that, even without an express pro-vision repealing the act of 1871; when the act of 1893 was passed by the General Assembly, the old city of Macon died, and the new city of Macon was born. Under its new charter, it entered upon its new life, and during the con-tinuance of that life the relator was elected to the office of chief of police. The passage of the act of 1896, repealing the provision of the act of 1893, which created the office of chief of police, does not, however, present the case of a repeal which is silent upon the subject to which the repealed statute related. Upon the contrary, it re-enacts some of the provisions of the repealed statute, and substitutes another and totally inconsistent provision touching the office of the chief of police. Under the act of 1893, the term of office

and duties of the chief of police were clearly defined. The
duty of electing the officer was committed to the board of
police commissioners. By the act of 1896, the office of
chief of police is no longer recognized as a legislative office.
The mayor and council may elect a chief of police. The
term of his office is not fixed, nor are his duties clearly pre-
scribed by statute. The presumption is, that the General
Assembly intended to commit that subject to the discretion
of the mayor and council. So that in the present case we are
confronted with a repealing statute which undertakes to
substitute provisions of its own in lieu of those contained,
not only in the statute which it in terms repealed, but also in
lieu of the provisions of the statute which was repealed by
the act which it in turn repealed. It would seem to us ab-
surd to impute to the General Assembly a purpose to revive
the act of 1871, when by act of 1893 it had undertaken
to make provision upon the same general subject, but in a
different manner, for the election of an officer apparently
corresponding to that of chief of police as recognized by the
acts of 1893 and 1896. We therefore reach the conclu-
sion, that the repeal of those provisions establishing the
office of chief of police, incorporated in the charter of the
city of Macon by the act of 1896, which were enacted in
the course of a legislative revision and restatement of the
charter provisions of 1871 bearing upon the same general
subject, does not of itself operate as a revival of the same
or similar provisions of the act of 1871; and further, that
upon the repeal of the provisions of the act of 1893, the re-
enactment of such provisions in the act of 1871 was neces-
sary to restore their force as law. Especially is this true
where, as in the present case, the act of 1896 in terms sub-
stitutes other and inconsistent provisions upon the same sub-
ject; and it follows as a consequence, that the office of chief
of police being dependent upon the continuance of the char-
ter provision under which it was created, when that charter
provision is repealed the office is extinguished. If this be

true, then the office to which this relator was elected was abolished by the act of 1896. His title rested upon the charter provision under which he was elected. That charter provision being repealed, and there being nothing in the repealing act saving him from the operation of its provisions, his term of office was extinguished.

3, 4. We have proceeded thus far upon the supposition that the act of 1896 did not contravene that provision of the constitution of this State, which prohibits the passage of an act by the General Assembly containing matter variant, from that expressed in the title; and we will now proceed to inquire as to whether the objection that the act was unconstitutional is well founded. It will be seen by reference to the title of the act, which is hereinbefore set forth, that it was designed to be an act to amend the charter of Macon in certain parts therein stated, and generally "for other purposes." The office of chief of police, as we have seen before, was a distinctive municipal office existing under the charter of the city of Macon. It could not fall properly within either of the particular subjects specified in the title of the act, and the objection that the act is unconstitutional, in so far as it undertakes to abolish the office of chief of police, is well founded, unless it is met by the use of the words, "for other purposes," expressed in the title. Different opinions may prevail elsewhere as to the value of these words as descriptive terms in the title of an act of the General Assembly; they have in this State a fixed legal significance, and the courts in passing upon the constitutionality of the acts of the General Assembly are not authorized to disregard it. As early as the year 1849, in the case of *Martin* v. *Broach*, 6 *Ga.* 21, this court, in considering the constitutionality of an act, held, in dealing with an objection that the body of an act contained matter different from that expressed in the caption: "Where the title specifies some of the objects for which the statute was passed, and contains this general clause, 'and for other purposes therein.

contained,' portions of the act not specially indicated in the title are, nevertheless, good under this general clause." There has been no substantial departure from this construction of the constitutional provision in question, and it was distinctly recognized and reaffirmed in the case of *Black* v. *Cohen*, 52 *Ga.* 621, as well as in numerous other cases which it is not necessary here to cite; and this notwithstanding the apparently conflicting view presented by Judge Trippe in delivering the opinion of the court in the case of *Board of Education* v. *Barlow*, 49 *Ga.* 232. Such words may well include and render constitutional incidental provisions which are germane to, and bear a generic relation to, the general subject expressed in the title. In the present case the general subject with which the General Assembly was undertaking to deal was that of amendments to the charter of Macon. Certain specified proposed amendments were indicated in the title, and the words "for other purposes" should legitimately have directed the attention of the General Assembly and the public to those matters comprehended within the general scope of the act which operated to amend the charter of the city of Macon. The abolition of the office of chief of police, and the substitution of another office of like kind were both germane to the general purposes of charter amendments expressed in the title. They were kindred subjects, closely related to the particular objects expressed in the title; and we do not feel constrained to hold, that the mere enumeration of certain particular objects concerning which the charter should be amended could have the effect so to restrict, as entirely to destroy the force of the general words expressed at the commencement and at the conclusion of the title.

We hold, therefore, that the act of 1896, in so far as it undertook to abolish the office of chief of police of the city of Macon, and to substitute in lieu thereof the provision that the mayor and council could elect a chief of police for the city of Macon, was not unconstitutional; and since the

office to which the relator was elected was abolished, and his term, in consequence, extinguished, he exhibited no title to the office in question, and the court did not err in refusing his application for leave to file the information quo warranto.

*Judgment affirmed. All the Justices concurring.*