DRAKE *et al.* *v.* BECK, and *vice versa.*

DRAKE *et al.,* commissioners, *v.* HAMMOND, and *vice versa.*

1. Construing as a whole the act of August 22, 1907 (Acts 1907, p. 193), which amended the act of 1897, creating the city court of Griffin (Acts 1897 p. 462), it did not, immediately upon its approval, oust the judge and solicitor of that court from office. They will continue to hold until their successors are elected and qualified in accordance with the terms of the act of 1907.
2. The salary of the present incumbent in the office of judge of the city court of Griffin, prior to the election provided for, was not increased by the act of 1907, but remained the same as previously fixed by the act of 1897.

Argued November 4,—Decided November 13, 1907.

Petitions for quo warranto, and for mandamus. Before Judge Reagan. Spalding superior court. October 3, 1907.

*Lloyd Cleveland* and *W. E. H. Searcy, Jr.,* for Drake et al.

*John I. Hall, Robert T. Daniel, J. J. Flynt,* and *J. D. Boyd,* contra.

LUMPKIN, J. On December 14, 1897, an act was approved by

which the city court of Griffin was established, its jurisdiction and powers defined, and provision made for the appointment of a judge and other officers thereof, and for the carrying of cases therefrom by bills of exceptions to the Supreme Court. Acts 1897, p. 462. By the third section of that act it was declared. "That there shall be a judge of the said city court of Griffin, who shall be appointed by the Governor, by and with the advice and consent of the Senate, whose term of office shall be four years, and all vacancies in said office shall be filled by appointment by the Governor for the residue of the unexpired term; such appointment being subject to the approval of the Senate." It fixed the salary of the judge at $800 per annum, to be paid from the county treasury; and declared that this should not be increased or diminished during his term of office. The fifth section of the act provided that there should be a solicitor of the court, to be appointed by the judge, whose term of office should be two years; and that the judge might remove the solicitor and appoint a successor at any time. It also fixed his fees, and the oath to be taken and the bond to be given by him. In 1900 an act was passed which changed the mode of appointment of the solicitor, so that instead of being appointed by the judge he should be appointed by the Governor. Acts 1900 p. 137. On August 22, 1907, an act was passed having the following title: "An act to amend an act entitled 'an act to establish the city court of Griffin in Spalding county,' approved December 14, 1897, and the act amendatory thereof, approved December 17, 1900, as follows: First, by providing for the election of the judge of said court by the qualified voters of Spalding county and providing for an increase in the salary of the said judge. Second, by providing for the election of the solicitor of the city court of Griffin by the qualified voters of said county of Spalding; by providing for the collection of fees of the solicitor of the city court of Griffin and the payment of the salary of the said solicitor and the disposition of the fees aforesaid." Acts 1907, p. 193. In this act it was declared that section three of the act of 1897 "be and the same is hereby stricken and repealed and the following be and the same is hereby substituted and enacted in lieu thereof, to wit: Sec. 3. Be it further enacted by authority of the same, that there shall be a judge of the city court of Griffin, who shall be elected by the qualified voters of

the county of Spalding, and whose term of office shall be four years; and all vacancies in the said office shall be filled by appointment of the Governor of Georgia for the residue of the unexpired term. The first election held under the provisions of this act shall be at the same time and place and under all the rules and regulations provided for the election of county officers of Spalding county, in October, 1908, and shall be for a term of years beginning January 1, 1909. Subsequent elections shall be held at intervals of four years from date of this first election. The judge of the city court of Griffin shall receive a salary of fourteen hundred dollars per annum, which shall not be increased or diminished during his term of office, and which shall be paid monthly on the receipt of said judge out of the treasury of Spalding county." In like manner it was declared that section five of the act of 1897 "be and the same is hereby stricken and repealed, and the following section is hereby substituted and enacted in lieu and instead thereof." Then followed a provision that there should be a solicitor of the city court, to be elected in like manner as the judge, and in regard to his qualifications, compensation, oath of office, and bond. The qualifications and bond required were different from those in the original act, and a fixed salary was provided in lieu of fees. It was declared that the solicitor should pay into the county treasury all the money to which he would have been entitled as fees under the act of 1897. Then follows this statement: "It is hereby enacted, however, that the present solicitor of the city court of Griffin shall not be entitled to collect any insolvent costs out of any funds which may come into court after January 1, 1909, until after the solicitor elected under this act and his successors shall have collected, out of the funds brought in court during their respective terms, all the costs, solvent or insolvent, to which they may be entitled."

The county commissioners of Spalding county, in their official capacity and as citizens and taxpayers, presented their petition for leave to file an information in the nature of a quo warranto, to determine the right of the solicitor who held office prior to the act of 1907 to continue to exercise the functions of such office, claiming that by that act the office was abolished, or at least that the tenure thereof was suspended until it should be filled by election or appointment. The respondent demurred to

the petition, on several grounds. The court sustained the de-murrer on the ground that under the act of 1907 the office of so-licitor of the city court was not abolished, but that the respondent was still the solicitor of that court. The petitioners excepted to the sustaining of the demurrer on this ground; and the respondent filed a cross-bill of exceptions, because the demurrer was not sus-tained on all the grounds thereof.

The commissioners declined to issue a warrant or order on the county treasurer, for the salary of the judge after the passage of the act of 1907. He applied for a mandamus to compel payment of his salary at the rate of $1,400 per annum. The court made the mandamus absolute, so far as to hold that he was entitled to the payment of a salary, but ruled that the amount was at the rate of $800 per annum, as fixed by the act of 1897. The com-missioners excepted to the ruling first stated; and he excepted to the decision as to the amount of the salary, by cross-bill of ex-ceptions.

The city court of Griffin was created by the legislature. It was not a court which the constitution required to exist. The legislature had power to abolish the court, or to amend the act establishing it; and this could be done although it might result in shortening the terms of office of the judge and solicitor, or termi-nating their tenure of office and requiring successors to be elected in lieu of the officials previously appointed by the Governor. *Dallis* v. *Griffin,* 117 *Ga.* 408; *Waters* v. *McDowell,* 126 *Ga.* 807. The authority of the legislature is not denied; but the controll-ing question is, not what the legislature could do, but what it actually did by the act of August 22, 1907. It is not so much a question of legislative power, as of legislative intent. Did the legislature, by that act, intend to abolish the offices of judge and solicitor of the city court of Griffin, or to terminate the author-ity of the occupants of those offices to further exercise their func-tions, until a judge and solicitor should be elected? Upon the answer to this question both cases depend. In establishing the city court and providing for its procedure by the act of 1897 the legislature impliedly determined that such a court would sub-serve the public necessity or the public convenience. They could have changed this determination and could have abolished the court; but mere amendments to the act establishing the court

would not destroy the presumption of the utility of its continued operation, unless there was some expression or implication to that effect. There is nothing in the act of 1907 to indicate any such legislative view. It provides for the continuance of the court, but only changes the method of selecting its judge and solicitor from appointment to election. The caption does not declare that the act is to repeal or even generally to amend the act creating the city court of Griffin; nor does it contain the somewhat vague precautionary words, "and for other purposes." It sets out that the act is one to amend the former act in certain specified particulars, and enumerates them. No doubt the act can be broad enough to carry into effect the purposes mentioned; but there is nowhere in the title any intimation that it was the legislative purpose to oust the judge and solicitor immediately, or to leave the court existing in name but in a state of coma as to all its functions for more than a year, and then to reawaken it into activity after the election of a new judge and solicitor. This was a court of record. It had both civil and criminal jurisdiction. It may fairly be assumed that there were pending before it cases of both characters. There may have been motions for new trials pending. It is common practice, where a brief of evidence can not be made up within thirty days, for the presiding judge to allow until some definite time for it to be completed and approved. If the judge were legislated out of office with no provision for cases thus pending, what would become of them? If there were persons accused of crime before that court and in jail awaiting trial, what would become of them and their cases in the alleged interregnum between August 22, 1907, the date of the passage of the act, and October, 1908, the date when the first election would be held? Did the legislature intend that pending suits should languish for thirteen or fourteen months, and that motions for new trials and such other matters as required the action of a judge within a limited time should die of inanition? Or did they intend, if there should be persons in jail awaiting trial, that they should cultivate the virtue of patience until after the election in 1908? The act provides for direct exception from that court to the Supreme Court (now to the Court of Appeals). If there had been judgments rendered against parties who desired to except and have their cases reviewed, did the legislature intend to cut off this

right by terminating the official existence of the judge? Or did they intend for him to be treated as one who was dead, or whose term of office had expired, or who had resigned, and have bills of exceptions verified as in such cases? No provision was made in the act of 1907, by transfer of pending matters to any other court or otherwise, for such contingencies. It may be doubted whether the legislature could have constitutionally effected such results, if they had sought to do so; and we feel very well assured that they had no such purpose.

Again, in the latter part of the act it is declared that the solicitor of the city court shall collect all the money to which he is entitled under the distribution of fines and forfeitures in that court, and turn over the money to the county treasurer. This evidently has reference to the solicitor who shall be elected, under the former provisions of the act. Then occurs this expression, "It is hereby enacted, however, that the present solicitor of the city court of Griffin shall not be entitled to collect any insolvent costs out of any funds which may come into court after January 1, 1909, until after the solicitor elected under this act and his successors shall have collected, out of the funds brought in court during their respective terms, all costs, solvent or insolvent, to which they may be entitled." This clause is perhaps susceptible of the construction that it merely meant to prohibit the solicitor who had held office from claiming an interest in funds collected by the solicitor elected and holding office after January 1, 1909, on account of insolvent costs, except under the condition stated. But the language may be fairly used to throw some light, though perhaps not very strong, upon the manner in which the legislature considered the solicitor already in office. The act was of no effect until it was approved. When it was approved and became the law, it referred to the solicitor as "the present solicitor." Now if the act itself operated to terminate the office of the previous incumbent eo instanti upon becoming of force by being approved, he was not then the present solicitor but the past solicitor. Moreover, the manner in which the clause is framed, in referring to any funds which may come into court after January 1, 1909, permits the inference, if it does not indicate the expectation, that funds may come in before that time. This verbal analysis may not in itself furnish strong proof of the legislative purpose, but it

may be legitimately considered along with other matters already referred to. While the act uses the expression that sections three and five of the act of 1897 are stricken and repealed, and that certain provisions shall be substituted therefor, yet, in the light of what has been said, we think that the evident legislative purpose was merely to amend that act and to provide for the election of a judge and solicitor in 1908, and thereafter; and that it was not the purpose to destroy either the court or its officers in the interval between the passage of the act and the election of their successors.

The ruling here made does not conflict with that in *Butner* v. *Boifeuillet,* 100 *Ga.* 743. There the charter of a city established by legislative act the office of chief of police. By a later act so much of the charter as created the position as a distinctive charter office was repealed and the title of the incumbent to the office was extinguished; but by the same act the municipal council was given authority to elect a chief of police.

As we have held that the act of 1907 was prospective in character, and that the amendment intended to provide for an election for successors to the judge and solicitor at a fixed time, and for the qualifications and salaries of the persons elected, this controls the contention that it increased the salary of the present incumbent in the office of judge. The terms of the amendment did not apply to him at all except to limit the time of his holding by appointment. Having held that for this reason the act did not terminate his official existence, we can not hold that it nevertheless increased his official salary. Until the election provided for, he retains his office under the terms of the act of 1897, and at the salary therein fixed.

In the case of Drake et al., commissioners, *v.* Hammond, the judgment complained of in the main bill is *affirmed,* and also that complained of in the cross-bill of exceptions. In the case of Drake et al. *v.* Beck, on the main bill of exceptions the judgment is *affirmed;* the cross-bill is *dismissed. All the Justices concur.*