STATE BOARD OF EDUCATION *et al. v.* COUNTY BOARD OF EDUCATION OF RICHMOND COUNTY.

No. 13361. JUNE 21, 1940. REHEARING DENIED JULY 13, 1940.

*Ellis G. Arnall, attorney-general, E. J. Clower* and *Marshall L. Allison, assistant attorneys-general,* for plaintiffs in error.

*Isaac S. Peebles Jr.,* contra. *W. K. Miller* and *F. Frederick Kennedy,* for person at interest, not party.

EDWARDS, J. The County Board of Education of Richmond County brought mandamus proceedings against the State Board of Education and the State Superintendent of Schools to compel apportionment to petitioner of its share of the State common-school funds on the basis prescribed by law prior to the adoption of what is known as the "equalizing-opportunities act of 1937" (Ga. L. 1937, pp. 882 et seq.), amended by the act of 1939 (Ga. L. 1939,

pp. 408-409). The defendants filed a general demurrer and an answer. No issues of fact being raised, the judge, after a hearing, overruled the general demurrer and granted a mandamus absolute, requiring the defendants to pay to the petitioner "its part of the common-school fund upon the basis of the law as it existed before the act of 1937." To this judgment the defendants excepted.

■ The question at issue is whether the act of 1937, as amended in 1939, applies to the defendant in error, as to the distribution of State school funds, or the law that existed before the passage of said act of 1937, which provided for distribution and apportionment upon the basis of its school population between the ages of six and eighteen years as compared to that of the State. In section 20 of the act creating the Board of Education of Richmond County (Ga. L. 1872, p. 456) it was provided "That no general law upon the subject of education, now in force in this State, or hereafter to be enacted by its General Assembly, shall be so construed as to interfere with, diminish, or supersede the rights, powers and privileges conferred upon the Board of Education of Richmond County by this act, unless it shall be so expressly provided by designating the said county and board under their respective names." It is urged by counsel for defendant in error that the failure of the General Assembly to make special reference to the act creating defendant in error in either the act of 1937 or the 1939 amendment thereto, as provided for in section 20, rendered nugatory any attempt to amend that act, and that accordingly the defendant in error is entitled to an apportionment of State school funds in accordance with the provisions of the act creating it and the general law of 1872 (Ga. L. 1872, p. 64), and not as provided in the act of 1937.

"The legislative power of the State shall be vested in a General Assembly which shall consist of a Senate and House of Representatives." Art. 3, sec. 1, par. 1, of the constitution (Code, § 2-1201). "The General Assembly shall have power to make all laws and ordinances consistent with this Constitution, and not repugnant to the Constitution of the United States, which they shall deem necessary and proper for the welfare of the State." Art. 3, sec. 7, par. 22, of the constitution (Code, § 2-1822). Comprehended in this broad power to "make all laws" is of course the power to change or modify existing laws. A law enacted by one General Assembly

is subject to repeal or modification by the same or a subsequent General Assembly. Since courts are required to construe laws enacted by the General Assembly (art. 6, sec. 1, par. 1; art. 1, sec. 1, par. 23) (Code, §§ 2-2901, 2-123), and these laws are enforced as thus construed, the provision of section 20 of the act of 1872 establishing the Richmond County Board of Education, above quoted, is but an attempt to provide that the General Assembly of the same or of any future year shall have no power to impair the act of 1872 except and unless they do so in the manner therein pointed out, i. e., expressly.

In art. 3, sec. 7, par. 17, of the constitution of 1877 (Code, § 2-1817), it was provided that "No law, or section of the Code, shall be amended or repealed by mere reference to its title, or to the number of the section of the Code, but the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made." While for a time some doubt existed whether in view of this provision the General Assembly had the power to work an implied repeal of an existing law (*Central R.* v. *Hamilton,* 71 *Ga.* 461; *Montgomery* v. *Board,* 74 *Ga.* 41, 44), it was finally settled in *Peed* v. *McCrary,* 94 *Ga.* 487 (21 S. E. 232), that this power (not being denied) did exist. In *Swift* v. *Van Dyke,* 98 *Ga.* 725 (26 S. E. 59), it was observed: "This court, in the past, has more than once intimated a doubt as to whether, under the constitution of 1877, repeals by implication existed at all in·this State. We are aware that such repeals are not favored, but, after most deliberate reflection, have been unable to bring ourselves ·to the conclusion that the constitutional convention ever intended to make it impossible, by any sort of legislation, to alter or repeal an existing law without fully describing it. We can not believe that the framers of our organic law desired or intended thus to hamper legislation. To hold that they did would result in the most serious embarrassment, and place almost insurmountable obstacles in the way of ·wise and beneficial legislation." It will be instantly seen that by section 20 of the act of 1872 the General Assembly, in so far as that particular act is concerned, attempted to do what the constitution of 1877 or any previous constitution had not done generally; that is, it attempted to provide in effect that there could be no implied repeal of that act. This it had no authority to do. In *Walker* v. *McNelly,*

121 *Ga.* 114 (48 S. E. 718), it was said: "One legislature can not lawfully provide that whenever a subsequent legislature enacts a statute with reference to a given subject, such statute shall embrace certain specified provisions. It can not tie the hands of its successors, or impose upon them conditions, with reference to subjects upon which they have equal power to legislate." In 12 C. J. 806, the following statement is found: "The power to amend and repeal legislation, as well as to enact it, is also vested in the legislature, and a legislature can not restrict or limit its rights to exercise this power by prescribing modes of procedure for the repeal or amendment of statutes; nor may one legislature restrict or limit the powers of its successors. . . A legislature may prescribe rules for the construction of statutes that may be applied to statutes thereafter enacted, in the absence of a different intent expressed therein; but if a different intent appears in the subsequent statute, effect must be given to that intent, notwithstanding the statutory rule." See further, in this connection, Mongeon *v.* People, 59 N. Y. 611, 618 (17 Am. R. 394); State *v.* Hicks, 48 Ark. 515 (3 S. W. 524); Mix *v.* Illinois Central R. Co., 116 Ill. 502 (6 N. E. 42); *Hamrick* v. *Rouse,* 17 *Ga.* 56; *Shaw* v. *Macon,* 21 *Ga.* 280; *Daly* v. *Harris, 33 Ga. Supp.* 38 (2); *Aven* v. *Steiner Cancer Hospital Inc.,* 189 *Ga.* 126 (5 S. E. 2d, 356).

It is pointed out, however, that art. 8, sec. 5, par. 1, of the constitution (Code, § 2-7001) provided that "Existing local school systems shall not be affected by this constitution," and it is contended that section 20 of the act, creating defendant in error as a local school system, was thereby approved by the constitution, and that this operated to make it binding on the General Assembly of future years. The above provision of the constitution did not have the effect of making the act of 1872 creating the defendant in error a part of the constitution (*Board of Public Education and Orphanage for Bibb County* v. *State Board of Education,* ante, 581), and we can not agree that this provision of the constitution had the effect of breathing life into section 20 of the act of 1872. Section 20 was only an incidental provision of the act of 1872 and had no direct reference to the establishment of the defendant in error, its powers and duties. The defendant in error as an existing independent school system is not impaired by the constitution of 1877, though section 20 be declared beyond the power of the General

Assembly. Therefore, regardless of special provision as to the manner of amendment, any subsequent legislature had full power and authority to amend or repeal said special act either expressly, or by implication.

■ Repeals by implication are not favored, and result only where the later of two acts is clearly repugnant to the former and so inconsistent with it that the two can not stand together, or where it is manifestly intended to cover the same subject-matter of the former and operate as a substitute for it, that such a repeal will be held to result. The intention to repeal must be plain and unmistakable. See *Johnson* v. *Southern Mutual Building & Loan Association*, 97 *Ga.* 622 (25 S. E. 358), and cit. "A general law will not be so construed as to repeal an existing particular or special law unless it is plainly manifest, from the terms of the general law, that such was the intention of the lawmaking body." *Franklin County* v. *Crow*, 128 *Ga.* 458 (57 S. E. 784); *McGruder* v. *State*, 83 *Ga.* 616 (10 S. E. 281); *Haywood* v. *Savannah*, 12 *Ga.* 404. It is admitted that the equalizing-opportunities act of 1937 as amended by the act of 1939 prescribed an entirely different method of apportionment and expenditure of State school funds from that prescribed by the act creating the Richmond County Board of Education and the general law of 1872. Acts 1872, p. 64. In ascertaining the true intent of the General Assembly it is well to note the development of education in this State and the legislative enactments providing therefor. It has been held that previous legislation may be adverted to in determining the intent of a legislative act. *Steam Laundry Co.* v. *Thompson*, 91 *Ga.* 47 (16 S. E. 198). While with the presentation of a thousand spelling-books to James Edward Oglethorpe by James Leake, in 1732, the first step was taken towards public education in Georgia, and while many private mission schools were established and maintained by local support, education was a privilege limited to those who could afford it. Recognizing the need for systematized public education the authors of the original State constitution (1777) inserted a clause providing that "schools shall be erected in each county and supported at the general expense of the State, as the legislature shall hereafter point out and direct." Although certain appropriations were made by the State for their support, these schools were forced to operate as private institutions and to rely on tuition fees.

The rural sections of the State endeavored to meet their educational needs with small elementary institutions called "Old Field Schools," established jointly by patrons and teachers and conducted without State or county control or aid, in which were taught, "reading, writing, and the usual rules of arithmetic." In 1817 the legislature made an appropriation for aiding elementary education, but this was limited to payment of tuition of children whose parents were unable to defray this expense, and such schools were known as "poor schools." However, not until 1858 did the word "poor" disappear from the statute books, and local systems were authorized, the first free schools being established in 1860. So, along with the State systems, there grew up a series of special schools regulated and controlled by local laws, such as that of defendant in error. Many of Georgia's private and semi-private educational institutions were permanently closed as a result of the war between the States, but after the war a general movement for State-supported schools resulted in a legislative act in December, 1866, providing for a "complete system of Georgia schools." This act, however, never came into effect, on account of the consequences of the war.

The constitution of 1868 provided that Georgia should have a "thorough system of general education to be forever free to all children of the State." Then, in 1877, a new constitution once more declared for a thorough system of common schools. It was fortunate that numerous local systems (including petitioner) had been established, and it seems clear that there was at no time an intention to strike them down. The constitution of 1877 provided for instruction in the "elementary branches of an English education only." One concession to higher education was that made to the University of Georgia. Thus, outside the larger towns and cities (including petitioner) there was no connecting link in the State educational system between the elementary schools and the colleges. It is clear that the framers of the constitution of 1877 were aware of the progress and advancement made by these independent systems superior to that provided for by the constitution, and were naturally interested in the continuance of these systems; therefore the provision in the constitution that they "not be affected" thereby.

Although the necessity for a link between the elementary schools

and the colleges was recognized as early as 1903, yet it was 1910 before a constitutional amendment was adopted providing for support of high schools by county taxation. During this interim in 1887, the General Assembly passed a general act relating to public schools, in which a provision was inserted protecting the acts constituting independent systems. Ga. L. 1887, p. 67, sec. LIII. The reason for this exemption is likewise apparent. In 1919 a similar clause was inserted, when the General Assembly codified the laws relative to education, again expressly providing for exemption from its provisions of these "independent systems in existence at the time of adoption of the constitution of 1877." In this act the provisions for support and maintenance of the common schools of Georgia were insufficient to place them on a parity with these independent systems. Again, in 1937, the legislature, recognizing the need for new legislation properly termed "equalizing-educational act," saw fit to expressly exclude these independent systems from the provisions therefor by express stipulation. Under this exception it soon was apparent that the independent systems were favored, because under the old census basis they were entitled to a greater proportion of the State school funds than they would be entitled to under this act. The educational system in this State has thus steadily progressed, and the disparity between the general and the independent systems has been in the greater part obliterated. The progress of the educational system in Georgia has been consistently upon a trend towards spreading and equalizing its opportunities among the whole people in every county in the State. As shown hereinbefore, it was not until after the abolition of slavery that the people began to awake to the necessity of a general education, and then only in a very limited way. Only a few counties, such as that of the defendant in error, were in position and able to provide for the general welfare of its citizens. Although the necessity for education had been recognized by a few, yet not until recently had there been a public demand for education of all the children and that it should be assumed by the State.

Although the law of 1937 helped to equalize educational opportunities, by providing for a seven-months school for all and other benefits, yet, it did not place them on a parity with these independent systems where a nine-months school had been in existence

for years. It was therein provided "that those counties in which the public schools are operated under special acts recognized and continued by the constitution of 1877 shall be governed by the provisions of this act, except where the same is in conflict with any such special act." In *State Board of Education* v. *Board of Public Education of Savannah,* supra, this court held that the Board of Public Education of Savannah (having jurisdiction of the City of Savannah and Chatham County Schools) was entitled to receive their proportion of the State school funds as provided by its charter and the general law of force at that time and before the act of 1937. The court said: "The provisions of the charter of the defendant in error and the sections of the act of 1937, supra, are in irreconcilable conflict as to the method of distribution of the common-school fund of the State, as we believe appears from the references to each just made. Such being the case, we are of the opinion that under the proviso in section 3 of the act of 1937 'that those counties in which the public schools are operated under special acts recognized and continued by the constitution of 1877 shall be governed by the provisions of this act, except where the same is in conflict with any such special act,' the charter of the Chatham County board is unaffected by the provisions of the act of 1937 which have been quoted, and that said board is entitled to have apportioned to it State school funds on the basis it was receiving them at the time of the act of 1937." A similar ruling was made in 186 *Ga.* 200, in reference to the Board of Education and Orphanage for Bibb County. Thus the Supreme Court, on May 14, 1938, and again on September 24, 1938, pointed out that the General Assembly had exempted independent school systems, such as the defendant in error, from the method of apportionment and expenditure of State school funds prescribed in the act of 1937 by virtue of the proviso contained in section 3 of that act. In less than a year after these decisions and at the very next session of the General Assembly, the proviso mentioned was stricken from the act of 1937. It is argued, that, under the rule that a general law will be construed as "silently excluding" a previous special law, the general law of 1937 would not have been in any way applicable to the independent school systems such as defendant in error, and that the only provision of the act of 1937 that in any way made its terms applicable to such systems was the proviso

in section 3 that they "shall be governed by the provisions of this act, except where the same is in conflict with any such special act;" and that the act of 1939, which struck this entire provision instead of merely the excepting clause, should be construed as merely excluding these systems from the operation of the act in any respect whatsoever.

We can not agree to this argument. While the proviso was not in its entirety merely an excepting clause, it is apparent that the General Assembly in passing the act of 1939 so treated it. The caption of the act of 1939 is as follows: "An act to amend the 'equalizing-educational opportunities act' approved February 10, 1937 (Georgia Laws 1937, pages 882-892) *by striking therefrom the provision excepting certain school systems from the operation of the said act;* and for other purposes." (Italics supplied.) It is quite true that the preamble or title of an act is no part thereof, but it may always be considered as one of the aids to its construction, when the body is ambiguous. *Eastman* v. *McAlpin,* 1 *Ga.* 157; *Smith* v. *Evans,* 125 *Ga.* 109 (53 S. E. 589); *Bentley* v. *State Board of Medical Examiners,* 152 *Ga.* 836 (111 S. E. 379); *Price* v. *Bradford,* 5 *Ga.* 364. While there is no ambiguity in the literal terms of the body of the act of 1939, there is clearly an ambiguity as to the intention or purpose of the General Assembly in striking this proviso from the act of 1937. In *Price* v. *Bradford,* supra, the caption of the act construed by the court was considered in determining the meaning of the act. Judge Nisbet, who delivered the opinion for the court, said: "I admit that the title and preamble to an act can only be resorted to when the body of the act is ambiguous, and that in this case there is no ambiguity in the letter of the statute. There is, however, ambiguity as to the spirit and intention. It is so ambiguous as to have given rise to various constructions by the circuit courts." It seems clear in the present case, that, this court having recently held that independent systems were as to the method of apportionment and expenditure of State school funds exempt from the provisions of the act of 1937, the General Assembly looked upon this proviso as an excepting clause, and that they intended to strike it as one "excepting certain school systems from the operation" thereof as stated in the caption. This being true, it is apparent that their intention was to make the provisions of the act of 1937 apply to such independent systems

as defendant in error. The situation is somewhat analogous to that where the General Assembly repeals a law and thereafter strikes down the repealing act. In such case it is held that the intention of the legislature was to reinstate the old law. *Harrison* v. *Walker*, 1 *Ga.* 32; *Clark* v. *Reynolds*, 136 *Ga.* 817 (72 S. E. 254); *Butner* v. *Boifeuillet*, 100 *Ga.* 743 (28 S. E. 464).

When every attempt for the entire period of the State's educational history has been towards the one goal, equalization of educational opportunities for all of its children, it is not unreasonable to conclude that the General Assembly felt that the State should no longer apportion educational funds on a more favorable basis to the independent systems. While it appears that the General Assembly has throughout the years, and even as late as 1937, intended to protect these independent systems from the effects of general legislation on education in this State, nevertheless it can not be said that the General Assembly with full knowledge of all these exemptions and protecting clauses in the various acts and constitution, and with knowledge of the ruling of this court as to the effect of this last exemption in the act of 1937, two years later did not have the plain and unmistakable intention of removing this exemption from the act of 1937, and could have had only one thought in mind, that of making these independent systems subject to and dependent upon the provisions of the act of 1937. The court erred in overruling the demurrer and in granting mandamus absolute.

*Judgment reversed. All the Justices concur.*